In re the Marriage of John R. **HODOWAL, Appellant–Petitioner,**

v.

Virginia **HODOWAL, Appellee–Respondent.**

No. 06A01–9306–CV–207.

Court of Appeals of Indiana, First District.

Jan. 31, 1994.

Marvin Mitchell, Steven K. Huffer, Mitchell Hurst Jacobs & Dick, Indianapolis, for appellant-petitioner.

Audrey K. Grossman, Treacy Grossman & Sullivan, Indianapolis, for appellee-respondent.

NAJAM, Judge.

### STATEMENT OF THE CASE

We are asked to decide whether an early retirement subsidy is marital property subject to division under our Dissolution of Marriage Act. Petitioner, John R. Hodowal ("Husband"), appeals from a Decree of Marriage Dissolution ("Decree") and Qualified Domestic Relations Order ("QDRO") awarding the Respondent, Virginia Hodowal ("Wife"), a part of Husband's subsidized early retirement benefits if he qualifies and retires before the normal retirement age. The trial court awarded Wife seventy-five percent (75%) of the current value of Husband's retirement plans, including that part of the early retirement subsidy attributable to Wife's share of Husband's benefits earned as of May 8, 1991, the date of separation. Husband contends that because there is only the possibility he will receive an early retirement subsidy, the subsidy is not marital property and cannot be divided.

We agree and reverse.

### ISSUE

The issue presented is whether an early retirement subsidy is marital property subject to division where the subsidy is available only if (1) the spouse continues his employment until he qualifies by age and years of service and (2) retires early.

### FACTS

Husband and Wife were married on September 3, 1966, and were separated on May 8, 1991, the date Husband filed a petition for

dissolution of marriage. After a contested final hearing on May 4, 1992, the trial court entered a Decree on June 17, 1992, which incorporated findings of fact and conclusions of law. The court found that the Husband's economic circumstances as Chairman and CEO of IPALCO Enterprises were substantially superior to those of the Wife and that given the extraordinary disparity in economic circumstances between them, an equal division of marital property would not be just or reasonable. Thus, the court awarded seventy-five percent (75%) of the marital estate to the Wife and twenty-five percent (25%) to the Husband, and specifically awarded the Wife seventy-five percent (75%) of the Husband's two retirement plans based on their "current value, as of the date of separation, to-wit: May 8, 1991." Record at 294.

The Husband participated in a Base Plan and a Supplemental Plan with Indianapolis Power & Light Company (IPALCO). Under the plans, age 65 is the normal retirement age, but a qualified participant who retires before normal retirement age is eligible for subsidized early retirement benefits to close the gap between a participant's early retirement annuity and his normal full retirement annuity. The Husband's normal retirement date would be March 1, 2010. However, a plan participant who has reached the age of 55 and has at least ten years of service is eligible for an early retirement subsidy if he also meets the "Rule of 85," that is, the numbers representing his age and years of service combined must total at least 85. As of the date of separation, the Husband was 46 years old and had worked for IPALCO for 23 years. Therefore, the Rule of 85 had not been satisfied and the Husband would not be eligible for an early retirement subsidy unless he continued his employment for some 9 more years.

The court directed the Wife's counsel to prepare a QDRO for the plans. However, the parties disagreed on whether the QDRO should provide for payments to the Wife from the Husband's early retirement subsidy. Husband maintained that the subsidy was not marital property and was not subject to division because it would not be available unless he continued to work until the year 2000. Wife contended that Husband's right to a subsidy was a benefit in a vested pension plan and that she was entitled to receive a part of it if he qualified for early retirement and retired early.

After hearing oral argument, the trial court concluded that the early retirement subsidy attributable to the value of the subsidy "earned on May 8, 1991" should be included in the marital estate and divided. Record at 43. In its order the court reasoned that the Wife was entitled to share in the subsidy which "had already, at least in part, been earned and paid for by services rendered" by the Husband prior to the separation date. Record at 43. Husband appeals from that determination.

## DISCUSSION AND DECISION

### Standard of Review

■ Traditionally, the division of marital assets has been a matter within the sound discretion of the trial court. *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, 643. The party challenging the trial court's property division must overcome a strong presumption that the court considered and complied with the applicable statute. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1325, *trans. denied.* We presume the trial court followed the law and made all proper considerations in making its decision. *R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 300.

■ When we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Myers v. Myers* (1990), Ind., 560 N.E.2d 39, 42. An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* It is under this strict standard of review that we

consider the Husband's contention that the trial court's determination was contrary to law.

### Early Retirement Subsidy

The question before us is whether the Husband's early retirement subsidy is marital property under the relevant statute, Indiana Code § 31–1–11.5–2(d), which provides:

> "(d) The term 'property' means all the assets of either party or both parties, including:
>
> (1) a present right to withdraw pension or retirement benefits;
>
> (2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested, as that term is defined in Section 411 of the Internal Revenue Code, but that are payable after the dissolution of marriage; and
>
> (3) the right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that is, or may be payable after the dissolution of marriage."

This section of our Dissolution of Marriage Act expressly permits the inclusion of specified pension-type interests among the marital assets to be divided. *In re Marriage of Adams* (1989), Ind., 535 N.E.2d 124, 125. Here, we must determine whether Husband's early retirement subsidy is "property" which falls within any of these statutory categories. *See id.* at 126.

Wife reasons that once a pension plan is vested, the plan in its entirety is part of the marital estate and that the subsidy here at issue is a benefit included within Husband's pension plans which vested during the marriage. Wife's argument rests upon at least two premises. First, Wife assumes that the plans are indivisible and that if the plans are vested before the date of separation, all benefits which become available under the plans after the date of separation are marital property regardless of whether or not a particular benefit falls within Indiana Code § 31–1–11.5–2(d). Second, Wife assumes that Husband's right to an early retirement subsidy was earned, at least in part, during the mar-

riage prior to the date of separation and that a part of the earned subsidy can be attributed to the Wife's portion of the pension which had vested as of May 8, 1991. Husband responds that the subsidy did not vest and cannot be claimed until the Husband has satisfied the conditions of the "Rule of 85." In other words, Husband contends that the subsidy had no value as property on the date of separation and cannot be included in the "current value" of the plans as of that date.

The trial court's order was based upon the following rationale:

> "On May 8, 1991, the early retirement subsidy had already, at least in part, been earned and paid for by services rendered by the husband prior to that date. The date upon which the husband decides to retire is no more significant when applied to the early retirement subsidy than to any other part of the pension."

Record at 43. After considering Husband's incredibly complex retirement plans, the trial court concluded that a pro-rata part of the early retirement subsidy was property "already in existence, bought and paid for as of the date of separation." Record at 43. The trial court was persuaded by the "logic" of the wife's argument that the Wife should get her pro-rata share of that part of the early retirement subsidy which was "earned" during the marriage. Record at 43.

The opinions of our supreme court in *Adams,* and in *Kirkman v. Kirkman* (1989), Ind., 555 N.E.2d 1293, provide the analytical framework to be applied under Indiana Code § 31–1–11.5–2(d). In *Adams,* the question was whether the husband's police pension was marital property. The husband had accumulated over twenty years of active service and was eligible for retirement. The police pension was not "disposable retired or retainer pay." The husband had no present right to withdraw the pension and, as a public employee, would have no contractual pension rights until retirement. However, the husband had qualified to receive accrued pension benefits, and his right to receive those benefits would not be forfeited upon termination of his employment. Thus, our supreme court held that his pension benefits were "proper-

ty" under Section 2(d) subject to division. *Adams*, 535 N.E.2d at 126.

In *Kirkman*, the husband was a member of the National Guard and expected a military retirement pension to vest upon completion of 20 years of service. At the time the decree was entered, vesting was expected to occur approximately one and one-half years in the future, but husband had not yet qualified for the pension. Our supreme court distinguished *Adams* and held that the husband's right to pension benefits "was neither vested nor had it become 'not forfeited upon termination' prior to the entry of the dissolution decree." *Kirkman*, 555 N.E.2d at 1294. On these facts, our supreme court affirmed the exclusion of husband's pension from the marital pot. *Id.*

■ Thus, to include pension benefits as marital property, those benefits must not be forfeited upon termination of employment or must be vested and payable either before or after dissolution. *See Waggoner v. Waggoner* (1988), Ind.App., 531 N.E.2d 1188, 1189. Unvested pension benefits cannot be included in the marital pot for division. *Id.* at 1189–90. Here, the trial court properly awarded Wife a percentage of Husband's vested retirement plans "based on current value, as of the date of separation." However, as a matter of law, that current value includes only "the deferred vested pension benefits acquired prior to the final separation date." *Id.* at 1190.

■ In this case, Husband's early retirement subsidy is not a vested right but an option, an opportunity contingent upon his continued employment and eventual qualification for the subsidy under the "Rule of 85." If he does not qualify and retire early under the plans, the option is forfeited upon termination of his employment. While Husband may qualify for this benefit in the future, he did not qualify at any time during the marriage, and this benefit is not marital property which could be divided.

The trial court's conclusion on this issue is based on its determination that on the date of separation, "the early retirement subsidy had already, at least in part, been earned and paid for by services rendered by the husband prior to that date." That conclusion was clearly erroneous. There is no evidence that any part of the subsidy was earned. Husband's contractual right to an early retirement subsidy has not accrued incrementally but will vest in its entirety, if ever, at one point in time some 9 years after the date of separation. It is true that during the marriage the Husband accumulated both age and years of employment with IPALCO which could be applied in the future toward his eligibility for an early retirement subsidy. However, on the date of separation, no right to the subsidy had been earned or accrued, and there was no vested or non-forfeitable property interest in the subsidy to divide.

Both Husband and Wife called expert witnesses whose testimony supported that conclusion. Husband's expert, an actuary and retirement plan consultant, testified that the early retirement subsidy is "immaterial" and that he did not include it in determining the present value of the plans. He explained he had been asked to determine "the value of the benefits that were vested at the date of separation," to compute the vested benefit, the amount Husband had "earned," and that since Husband had not yet earned an entitlement to any early retirement subsidy, it was not appropriate to consider it. Record at 373 and 375. Husband's expert acknowledged that a QDRO could allocate a retirement subsidy between the parties, but only if the value of the combined subsidy did not create a subsidy benefit greater than the whole and "so long as it doesn't create value that is not currently resident in the plan." Record at 376. It is the second condition that is missing in this case.

Wife's expert, an actuary and pension consultant, testified to the same effect. He testified that the subsidy is "earned once [Husband] attains age 55 and has then satisfied what is called the Rule of 85—your age, plus years of service, equals 85" and that the subsidy "kicks in ... as of that date." Record at 424. He also valued the plans based on benefits accrued at separation, without the early retirement subsidy.

Both experts were in substantial agreement on this issue. They each presented calculations and exhibits showing the present

and future value of Husband's interest in the plans based only on Husband's retirement benefits accrued at separation. Neither expert included the early retirement subsidy in his valuation.

Wife relies upon our opinion in *Tirmenstein v. Tirmenstein* (1989), Ind.App., 539 N.E.2d 990, in which we held that the marital property subject to division is the pension benefit plan as it exists when the marriage is dissolved. *Id.* at 992. In *Tirmenstein*, we concluded that the trial court did not improperly divide a future asset when it awarded the wife a part of the percentage increases in the husband's police pension benefits attributable to his additional years of service and wage increases received after the marriage was dissolved. We stated that the right to receive pension or retirement benefits as marital property includes "the pension plan in its entirety with all its benefits and detriments." *Id.*

However, the retirement benefits under the plan in *Tirmenstein* were "non-determinable," that is, non-forfeitable. *Id.* Here, Husband has no present right to an early retirement subsidy, only an option to take subsidized early retirement benefits which are forfeited if Husband's employment is terminated before he qualifies and elects early retirement. In *Tirmenstein*, the trial court did not divide the present value of the husband's pension but gave the wife a percentage of whatever the husband received when and as he received it in the future, a distribution in kind authorized under Indiana Code § 31–1–11.5–11(b)(4). Here, the trial court divided Husband's retirement plans "based on current value" and assigned to Wife as the alternate payee an immediate right to receive seventy-five (75%) of the present value of Husband's benefits, payable to her at her option any time after Husband qualifies for retirement at age 55. Under the IPALCO retirement plans, the early retirement subsidy has not vested and has no current value. Under Section 2(b) of the statute, a retirement benefit included in the marital property must either vest and be deferred, or it must not be forfeited upon termination.

In *Tirmenstein*, as in *Adams*, the husband's police pension had not vested because the pension rights of public employees do not vest until retirement, but the husband's contract right to receive his police pension could not be forfeited upon termination of his employment, which satisfied the second condition of Section 2(b). Here, the early retirement benefit has not vested and been deferred, and it would be forfeited upon termination of Husband's employment. Thus, *Tirmenstein* is not useful precedent in considering this case.

Husband and Wife both rely upon our opinion in *Hughes v. Hughes* (1992), Ind. App., 601 N.E.2d 381, *trans. denied,* in which we held that the husband's early retirement supplement, which was available to him if he chose to retire prior to age 62, met the statutory definition of marital property. In *Hughes,* at the time of the dissolution, the husband had reached the early retirement age, had a present right to receive the supplement, and would not forfeit that right upon the termination of his employment. *Id.* at 383. Thus, the supplement in *Hughes* met two dispositive tests: it was vested and could not be forfeited. In this case, Husband's early retirement subsidy meets neither test. Wife's reliance on *Hughes* is misplaced.

Finally, wife also relies on *Staller v. Staller* (1991), Ind.App., 570 N.E.2d 1328. In *Staller,* the husband alleged that a part of his thrift plan should not have been included in the marital estate because it had not vested at the time the petition for dissolution was filed. *Id.* at 1331. We held that for the purpose of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Id.; see Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071, 1074. In *Staller,* it was undisputed that the plan had fully vested prior to the final decree. *Staller,* 570 N.E.2d at 1331–32. The holding in *Staller* is inapposite.

## CONCLUSION

Applying the statute, we conclude that at the time of separation Husband had no present right to withdraw the subsidy under Section 2(d)(1) because he did not qualify for it and had not retired; Husband had no right

to receive the subsidy which was "not forfeited upon termination" of his employment under Section 2(d)(2); Husband had no vested right to receive the subsidy, payable after the dissolution under Section 2(d)(2); and the subsidy was not "disposable retired or retainer pay" under Section 2(d)(3). Thus, under the *Adams* and *Kirkman* analysis, the subsidy was not "property" under any category of Indiana Code § 31–1–11.5–2(d), and the trial court was not authorized to include it in the marital estate.

We recognize that the operation of Indiana Code § 31–1–11.5–2(d) in this context may produce what may be considered an inequitable result. However, an expected future pension or retirement benefit must first be property as defined in Section 2(d)(2) or 2(d)(3) before it can be distributed under Indiana Code § 31–1–11.5–11(b)(4). Husband's early retirement subsidy was nothing more than possible future retirement income and as a matter of law was not marital property at the time of separation. The IPALCO retirement plans did not provide for a partial vesting, and a partial vesting cannot be inferred or imputed. The Husband's right to the subsidy will vest only if and when he qualifies and retires early at some date after the final separation.

The judgment on this issue is reversed and this case is remanded with instructions for the trial court to enter an amended Qualified Domestic Relations Order not inconsistent with this opinion.

SHARPNACK, C.J., and ROBERTSON, J., concur.