David B. SKINNER, Appellant–Petitioner,

v.

Carla S. SKINNER, Appellee–Respondent.

No. 29A02–9403–CV–111.

Court of Appeals of Indiana, Second District.

Dec. 7, 1994.

Arvin R. Foland, Arvin R. Foland & Associates, Noblesville, for appellant.

Melvin A. Richards, Joan R. Lawrence, Richards, Boje & Pickering, Noblesville, for appellee.

## OPINION

FRIEDLANDER, Judge.

David B. Skinner appeals the judgment in his marital dissolution action against Carla.S. Skinner, presenting the following consolidated and restated issues for review:

I. Did the trial court err in dividing the marital assets?

II. Did the trial court err in calculating the amount of David's pension which was subject to division?

III. Did the trial court err in calculating the amount of David's child support obligation?

IV. Did the trial court err in failing to order Carla to execute a waiver of tax exemption in favor of David?

V. Did the trial court err in ordering David to pay Carla's attorney fees?

We affirm in part, reverse in part, and remand.

The parties' nine-year marriage was dissolved by a July 27, 1993 Decree of Dissolution. At the time of dissolution, there were two minor children of the marriage. The dissolution action culminated in a contested final hearing at which numerous matters were disputed, including division of marital assets, visitation, and child support. Further relevant facts will be provided in the discussion of each issue.

I.

■ The court determined that an equal division of property between David and Carla was appropriate, a determination which neither party challenges. David contends, however, that the court failed to accomplish an equal division because it erred in valuing certain of the parties' assets.

■ The valuation of assets is committed to the trial court's sound discretion. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650. The trial court does not abuse its discretion in valuing property if there is sufficient evidence and reasonable inferences therefrom to support the result. *Cleary v. Cleary* (1991), Ind.App., 582 N.E.2d 851. We will reverse only upon determining that the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* When reviewing the valuation of property, we will not reweigh the evidence, but will consider the evidence in a light most favorable to the judgment. *Nill v. Nill* (1992), Ind.App., 584 N.E.2d 602, *trans. denied.*

At the time of judgment, the parties lived in separate residences. The trial court determined that David should receive the personal property then in his possession except for two bar stools and a microwave oven, which were awarded to Carla. The personal property awarded to David was valued at $14,715. David was also awarded the Wal-Mart profit-sharing account valued at $3,000, Wal-Mart stock valued at $3,800, and real property acquired during the marriage with a net value of $4,800. Carla was awarded all of the personal items in her possession and,

in addition, David was ordered to pay Carla an amount constituting one-half of the equity in the real estate awarded to David, one-half of the value of the Wal–Mart stock, and one-half of the value of the Wal–Mart profit-sharing account.

The court calculated that the total value of the property awarded to David was $20,515, and the value of the property awarded to Carla was $12,500. The court then ordered David to pay Carla one-half of the difference between the value of the property awarded to each, which equaled $4,132.50.

David contends that the trial court mistakenly included in its valuation of David's personal property the value of all of the property owned by both David and Carla. David cites in support of this contention appraiser Larry Baker's report, in which Baker appraised the total value of the property of both at $14,170, of which the value awarded to David was $3,415. The record also contains, however, an exhibit entitled "PERSONAL PROPERTY DIVISION", prepared by Carla, which contains Carla's appraisal of the value of the parties' personal property. *Record* at 256–57. Carla appraised the value of the personal property awarded to David at $17,065.

■ In effect, David requests that this court use Baker's values and not Carla's in determining that the trial court abused its discretion in valuing the personal property. An appraisal submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determinations in that regard. *See, e.g., Nill, supra.* We refuse David's invitation to engage in the forbidden reweighing of evidence. *Id.*

The court's valuation of the property awarded to David was within the scope of the evidence, whose parameters were defined by Baker's and Carla's respective appraisals. As such, there was a rational basis for the award and the result was not clearly against the logic and effect of the facts and reasonable inferences before the court. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, *trans. denied.*

## II.

■ David was employed by Wal–Mart. Through Wal–Mart, David was provided with a pension-type profit sharing plan. At the time of the dissolution decree, David's pension account had a balance of $3,092.86 and was 20% vested. David contends that the trial court erred in determining that the entire pension account balance, as opposed to vested 20%, was marital property subject to division.

Upon the dissolution of a marriage, the trial court is authorized to divide the parties' "property", as that term is defined in Ind. Code 31–1–11.5–2. I.C. 31–1–11.5–2 states:

"(d) The term 'property' means all the assets of either party or both parties, including:

(1) A present right to withdraw pension or retirement benefits;

(2) The right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested, as that term is defined in Section 411 [26 U.S.C. § 411] of the Internal Revenue Code, but that are payable after the dissolution of marriage; and

(3) The right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that is or may be payable after the dissolution of marriage."

David's pension fund is not "disposable retired or retainer pay" as described in section (d)(3). Similarly, the record does not indicate that David had a present right to withdraw money from the pension fund as described in section (d)(1). Accordingly, the pension fund qualifies as marital property only if it satisfies the criteria set out in section (d)(2).

In order to qualify under section (d)(2), it is not important that the funds are eligible for immediate withdrawal. The time frame within which the party may access the funds is not relevant. Rather, the determinative factor is whether the party "possesses" the funds. Pursuant to section (d)(2), "a retirement benefit included in the marital pot must either vest and be deferred, or it must not be

forfeitable upon termination." *Hodowal v. Hodowal* (1994), Ind.App., 627 N.E.2d 869, 872, *trans. denied.* The parties agree that at the time of dissolution, the pension account was 20% vested. This means that David had earned a present right to withdraw, in the future, 20% of the amount that was then in the fund, i.e., 20% of $3,092.86, and that the right to 20% of the pension account was not forfeitable upon termination. It is clear that the vested amount is marital property within the meaning of the statute and therefore is subject to division. The question presented is whether the remainder of the fund, i.e., the unvested 80%, was properly divided by the court as marital property.

In *Waggoner v. Waggoner* (1988), Ind., 531 N.E.2d 1188, 1189 the court was asked to decide whether enhanced pension benefits were divisible marital assets if the benefits enhancement accrued after the date of divorce by virtue of the pensioner attaining a particular number of years of credited pension service. In *Waggoner*, the husband had worked for his employer for 25.4 years, thereby acquiring pension benefits. The husband's pension plan called for his pension benefits to be "greatly enhanced" after he had attained 30 years of credited service. The trial court determined that the enhanced benefits may have been divisible marital property, stating:

> "The court finds that given the uncertainty of the husband achieving the 30 years credited service milestone; and the present diversity of the evidence as to the value of the pension (largely due to the uncertainty of the husband achieving the 30 year pension plateau) that the court should take the pension issue under advisement until such time as the uncertainties have been removed by events and the passage of time." *Id.* at 1189.

Our Third District reversed the trial court upon concluding that the enhanced benefits, if attained, were not divisible marital property. The court reasoned that "only pension benefits vested at the time of the final sepa-

ration should be included in the pot of divisible marital assets." *Id.*

The *Waggoner* rationale, however, seems to conflict with the holding in *Tirmenstein v. Tirmenstein* (1989), Ind.App., 539 N.E.2d 990. In *Tirmenstein*, the trial court determined that the wife was entitled to:

> "one half of the pension benefits that the Husband will received [sic] based upon the length of the parties' marriage. The formula to be used in determining Wife's portion of said benefits shall be computed by dividing the number of months that the parties were married up to the date of separation which number is 342, by the total number of months that Husband serves as a police officer prior to his retirement, and then dividing that percentage by 2." 539 N.E.2d at 991.

As the husband's years of service increased, so did both the base pay amount used to calculate his pension benefit and the percentage of base pay he was entitled to receive. The husband contended that, in awarding the wife a flat percentage of his entire pension, the court was giving her the benefit of years of service occurring after dissolution.

The court rejected the husband's argument, concluding that the husband's right to receive an increase in the pension percentage and the right to receive an increase in the pension base were earned "during the parties['] marriage by serving as a police officer for twenty [20] years and these rights constitute marital property because they are part of the *res* that is now non-determinable." *Id* at 992.[1]

*Tirmenstein* appears to stand for a proposition contrary to that set out in *Waggoner*. In *Tirmenstein*, the court determined that pension enhancements which were earned by years of service occurring after dissolution were divisible marital property. On the other hand, in *Waggoner*, the court ruled that a pension enhancement accruing because of years of service occurring after dissolution was not divisible marital property.

---

**1.** The significance of the husband's twenty years of service was premised upon *In re Marriage of Adams* (1989), Ind., 535 N.E.2d 124, in which our Supreme Court held that police pension benefits of an officer who completes twenty years of service prior to the final dissolution hearing are marital property within the meaning of I.C. 31–1–11.5–2(d)(2).

More recently, in *Hodowal, supra,* our court was asked to decide whether an early retirement subsidy is marital property subject to division where it is available only if the spouse continues employment (after dissolution) until he qualifies by age and years of service and retires early. In *Hodowal,* the husband would not be eligible for early retirement subsidy until nine years after the date of dissolution. The wife contended that the subsidy was a benefit contained in a vested pension plan and she was entitled to receive a portion of it if the husband qualified and retired early. The trial court agreed with the wife and awarded her a portion of the subsidy. Our First District reversed upon determining that "the early retirement benefit has not vested and been deferred, and it would be forfeited upon termination of Husband's employment." *Id.* at 874. The *Hodowal* court distinguished *Tirmenstein* upon the ground that the retirement benefits in *Tirmenstein* were non-forfeitable, unlike the subsidy which was the subject of *Hodowal.*

David's pension fund is unlike that in *Tirmenstein* because the latter was fully vested and David's is not. On the other hand it cannot be said that David's pension fund is compartmentalized like the plan in *Hodowal.* In *Hodowal,* the pension plan was fully vested, but the early retirement subsidy, a separate and distinct component of the pension plan, was not vested. Here, the profit sharing fund is comprised of a lump sum, in this case $3,092.86. We conclude, therefore, that the instant situation is more closely analogous to that addressed in *Waggoner.*

■ In *Waggoner,* the court determined that the wife was not entitled to that portion of the husband's pension which was attributable to years of service occurring after dissolution. In the instant case, although David's pension fund contained $3,092.86 on the date of dissolution, it was only 20% vested, meaning that if he were terminated on the date of dissolution, he would have been entitled to only 20% of the total amount, or $618.51. The remaining 80% could only be "acquired" through years of additional service. David would "acquire" the remaining amount at a rate of 20% per year of employment. In the

instant case, therefore, such "acquisition", to the extent that it occurs, will do so after the date of dissolution. "Property acquired after the final separation date [i.e., date of dissolution] should not be included in the pot of divisible marital assets." *Waggoner, supra,* at 1189. Moreover, the unvested 80% did not meet the two dispositive tests identified in *Hodowal:* it was, of course, not vested, and it would be forfeited upon David's immediate termination. *Hodowal, supra,* 627 N.E.2d at 874. It is of no moment that a portion of the funds in the pension plan were vested and not subject to forfeiture. We hold that, at the time of dissolution, the unvested portion of a pension plan that is only partially vested is not divisible marital property.

At the time of dissolution David had no present right to withdraw the unvested portion of the fund under section 2(d)(1); David had no right to receive the unvested portion which was not forfeited upon termination of his employment under section 2(d)(2); David had no present right to receive the unvested portion of the fund, payable after the dissolution under section 2(d)(2); and the unvested portion was not disposable retired or retainer pay under section 2(d)(3). Therefore, the unvested portion was not "property" as defined in I.C. 31–1–11.5–2(d) and the trial court erred in including it in the marital estate. *Hodowal, supra; Waggoner, supra.*

### III.

David contends that the trial court erred in calculating the amount of his child support obligation.

■■ The determination of the amount of child support is committed to the trial court's discretion and will not be overturned unless it is clearly erroneous. *McGinley–Ellis v. Ellis,* (1994), Ind., 638 N.E.2d 1249. A child support order is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Id.* Support awards arrived at through application of the child support guidelines are presumptively correct. *Kyle v. Kyle* (1991), Ind.App., 582 N.E.2d 842, *trans. denied.*

In the instant case, the trial court applied the Indiana Child Support Guidelines in calculating David's obligation to be $207 per week. David acknowledges that "[u]pon application of the incomes, health care, work related child care expense on the child support worksheet, we come to the support figure of Two Hundred Six Dollars and Fifty–Five Cents ($206.55)." [2] Appellant's Brief at 21. David's argument is directed to the trial court's refusal to deduct from that amount 10 percent because he exercises regular visitation, pursuant to Child Support Guideline 6, and its refusal to deduct an additional 6 percent for uncovered health care expenses pursuant to Child Support Guideline 3.

### A.

The Commentary to Guideline 6, intended to "assist courts, practitioners and litigants in the application of the guidelines," (Guideline 6), states:

"**Deviation From Guideline Amount for Regular Visitation.** The computation of support under the Guidelines does not take into consideration credit for time the child(ren) spend with the noncustodial parent during regular visitation. If visits occur on alternate weekends, as is customary in many court orders the noncustodial parent bears the costs associated with child rearing two (2) days of every fourteen days, or 14.3% of the time. Taking into account the ongoing costs in the custodial home, it is recommended that support be reduced by up to ten percent (10%) per week in situations where the noncustodial parent regularly exercises alternate weekend visitation. Presumably the noncustodial parent would then have additional discretionary income to spend on the needs of the child(ren) while visiting."

David contends that the trial court's failure to reduce the support amount pursuant to the above provision constituted a "misapplication of the Rules and therefore, a breach of discretion by the Trial Court." Appellant's Brief at 22.

David offers no authority for the proposition that the ten-percent reduction is mandatory, nor do we find any. The language itself, i.e., "it is recommended", indicates that application of the reduction is left to the discretion of the court. Our conclusion in this regard is further supported by the following explanatory clause contained at the end of the Commentary:

"It is not recommended, however, that a reduction of ten percent (10%) simply be given in each support order. The court should assure itself through evidence presented that the visitation will occur on a regular basis. Further, if support is set at a minimal amount, such a reduction in the support order could jeopardize the custodial parent's ability to support the child(ren). If that is the case, such a deviation from the Guideline should not be given." 1994 *Indiana Rules of Court* at 374.

The Commentary reflects that the ten-percent reduction is a matter committed to the trial court's discretion based upon the trial court's evaluation of the evidence, including specifically the evidence pertaining to the regularity of visitation and the size of the child support obligation. David notes that the evidence demonstrated that he exercised regular visitation. He also contends that his child support obligation leaves him with a marginal amount of discretionary income.

The comment does not identify either factor (i.e., visitation or amount of support award) as being determinative. Thus, the fact that David exercises regular visitation does not decide the question. More important in the instant case is the adequacy of the support award without the reductions. Although the trial court did not articulate its reasons for failing to implement the ten-percent reduction, we conclude that such was justifiable in light of Carla's income. The comment states that the ten-percent reduction should not be effected if it reduces child support from an amount that is already "minimal". The trial court found that Carla's weekly income was $132 per week, as com-

---

**2.** This amount and the $207 amount imposed by the trial court were arrived at by inserting certain numbers into a formula used to compute child support payments. After application of the formula, the difference between the amount of the weekly support obligation imposed by the trial court and the amount here acknowledged by David is *de minimis* and will not be addressed.

pared to David's income of $752 per week. The trial court was presented with evidence concerning the parties' respective living expenses and the costs associated with raising their minor children. We conclude that, in view of the level of Carla's income and the amount of the child support award, the trial court's refusal of David's request for a ten-percent reduction was not clearly erroneous.

### B.

■ David contends that the trial court abused its discretion in applying the provision pertaining to uncovered health care expenses.

The Commentary to Guideline 3 explains the apportionment of uncovered health care expenditures and the relationship between health care and the amount of the child support obligation:

"The data on which the Guideline schedules are based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense. The noncustodial parent is, in effect, prepaying health care expenses every time a support payment is made. Consequently, the Guidelines require that the custodial parent bear the cost of health care expense up to six percent (6%) of the basic child support obligation found on line 4 of the worksheet.... Thus, the custodial parent would be required to spend [an amount representing 6% of the annual child support obligation] before the noncustodial parent would be required to contribute." *Indiana Rules of Court* at 369.

The Commentary further indicates that uncovered health care expenses in an amount exceeding six percent of the child support obligation should be apportioned between the parties.

In the instant case, the court determined that uninsured medical expenses should be apportioned as follows:

"The first six (6) percent of uninsured medical, hospital, dental, prescription and optical expenses shall be paid by [Carla] out of the support paid as herein provided. 84.66% of the remaining uninsured expenses shall be paid by [David] and 15.34%

shall be paid by [Carla]. [David] shall maintain health, hospital and medical insurance on the children and should deliver insurance cards forthwith to [Carla]. Should said insurance change in the future, [David] should forward substitute cards to replace those which are in effect at the present time." *Record* at 15–16.

Regardless of whether David's assertion is correct that the trial court "intended to apply the six-percent provision regarding ordinary medical expenses" (Appellant's Brief at 24), implementation of this paragraph of the decree would accomplish a clearly erroneous result. According to the decree, Carla is individually responsible for only the first six percent of the total amount of uninsured health care expenses, and then is responsible for a fraction, in this case 15.34 percent, of the remaining ninety-four percent of uninsured expenses. Such is not a correct interpretation of the six-percent provision.

■ The Guideline Commentary provides clarification regarding the manner in which the six-percent provision is to operate. The trial court is to multiply the amount of the weekly support obligation by fifty-two, and then multiply the product by six percent. This computation yields a figure equalling six percent of the total child support obligation, which represents the amount of uncovered medical expenses the parent receiving child support must pay, in its entirety, before contribution from the other parent may be required. *In re the Marriage of Truman v. Truman*, (1994), Ind.App., 642 N.E.2d 230. The parties' respective obligations for amounts in excess of six percent of the annual child support obligation is a determination committed to the sound discretion of the dissolution court.

■ In the instant case, the correct application of the six-percent provision achieves the following: $207 × 52 = $10,764 × .06 = $645.84. Therefore, Carla is to pay the children's first $645.84 in uncovered medical expenses, an amount which represents six percent of the amount entered on line 4 of the Child Support Obligation Worksheet, ie, the basic child support obligation. The trial court determined that David and Carla would

each pay a percentage of the amount in excess of the six-percent obligation. That percentage was arrived at through dividing David's and Carla's individual salaries, respectively, by the combined salary of both. This formula reflects the trial court's intention to base responsibility for excess medical expenses upon financial ability to pay. This aspect of the trial court's application of the six-percent provision does not constitute an abuse of discretion.

In summary, the trial court's refusal to reduce David's obligation by ten percent is affirmed. The trial court's implementation of the six-percent uncovered medical expenses provision is clearly erroneous and is reversed, except for the provision pertaining to payment of uncovered medical expenses in excess of six percent of David's annual child support obligation, which is affirmed.

### IV.

■ Sometime prior to the final hearing, David and Carla had agreed that each would claim one child as a tax exemption. At the final hearing, however, David requested that Carla be ordered to execute a waiver of tax exemption, thereby awarding to David the right to claim tax exemptions for both children. David contends the trial court erred in refusing to order Carla to execute a waiver of tax exemption in favor of David.

■ In a proper case, the trial court may order the custodial parent to sign a waiver of the presumed right to claim the child as a dependent for federal income tax purposes. *Lamon v. Lamon* (1993), Ind.App., 611 N.E.2d 154. The *Lamon* court noted that the purpose of requiring the noncustodial parent to sign a waiver is to maximize the amount of support available for the child. *Id.* at 159. With this purpose in mind, the *Lamon* court identified the following as factors to be considered when assessing the trial court's decision in this regard: 1) Whether the noncustodial parent will be paying a majority of the support; 2) the relative incomes of the parties; and 3) the tax consequences of divesting the custodial parent of the exemption. *Id.* It is undisputed that David will be paying a majority of the support and that his income is higher than Carla's. Both of these factors favor awarding David the second tax exemption.

The record is silent with regard to the third factor, i.e., the tax consequences of transferring the exemption from Carla to David. At the final hearing, David testified only briefly on the subject of the tax exemption. David testified that, claiming one child as an exemption, he owed $700 in year-end taxes in 1992. David then testified that if he had been able to claim exemptions for both children, he would have saved $600 in taxes. The court sustained an objection to this testimony on the basis that David was not an expert on the subject of tax preparation. Apart from the disallowed testimony, there is no evidence of record demonstrating the tax consequences to David of granting him the second tax exemption. Nevertheless, it must be remembered that the focus of inquiry into the third factor is on the effect, if any, of divesting Carla of the exemption.

■ The record supports the trial court's determination that Carla's weekly income was $132.00. Carla's annual income, therefore, was $6864.00. Although no evidence was offered with respect to Carla's tax burden based upon the annual income attributed to her, appellate courts may take judicial notice of United States statutes and acts of Congress, such as the United States Tax Code. *See, e.g., Darnell v. Secrest* (1950), 120 Ind.App. 240, 91 N.E.2d 797. It does not require a detailed analysis of the tax code or testimony from a tax expert to discern that, after deducting Carla's personal exemption and subtracting her standard deduction, Carla's entire annual income will be exempt from taxation. Carla (and therefore the children) will not benefit financially by having the disputed tax exemption. It follows that Carla will suffer no hardship as a result of being divested of the exemption.

■ The central goal of allocating tax exemptions is to maximize the amount of support available for the children. Two of the three factors upon which competent evidence was presented would appear to favor award of the exemption to David. With regard to the third factor, i.e., the tax consequences, the record reveals that Carla will neither realize benefit nor suffer detriment as a result of the tax exemption, regardless

of whom the exemption is awarded to. Although the record does not contain competent evidence of the effect upon David of having the exemption, it is reasonable to conclude that he, and therefore the children, may realize a benefit.

We deem it consistent with the goal of the tax-exemption allocation to reverse the trial court's award of the tax exemption to Carla, and to remand for the purpose of conducting a hearing to determine whether David would benefit financially if the second exemption were awarded to him. After the hearing, the court is ordered to determine anew, in light of the evidence presented at the hearing, and consistent with the purpose of the tax-exemption allocation, as discussed in this opinion, whether to order Carla to execute a waiver of tax exemption in favor of David.

### V.

David contends that the trial court erred in ordering him to pay a portion of Carla's attorney's fees.

A trial court may, at its discretion, order one of the parties in a dissolution action to pay all or part of the other party's attorney's fees. *Selke v. Selke* (1992), Ind., 600 N.E.2d 100. Our review of such determinations was set out as follows:

> "Trial courts enjoy broad discretion in awarding allowances for attorney's fees.... Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court.... In assessing attorney's fees, the court may consider such factors as the amount of assets awarded to the parties, the relative earning ability of the parties, and which party initiated the action." *Selke, supra,* at 102.

David acknowledges that he initiated the action, he possesses the greater earning capacity, and that "the award of assets in this case was, at best, an equal division." Appellant's Brief at 32. In view of the fact that two of the three relevant factors favor an award of attorney's fees to Carla, and the third is neutral, we cannot conclude that the award of attorney's fees is clearly against the evidence. The trial court did not abuse its

discretion in ordering David to pay $3,500 of Carla's attorney's fees.

This cause is remanded to the trial court with instructions to adjust the property division consistent with this opinion, and to conduct a hearing for the purpose of receiving evidence relative to the tax consequences to David, if any, of ordering Carla to execute a waiver of tax exemption in favor of David. The trial court is also instructed to modify the decree of dissolution, consistent with this opinion, with respect to payment of uncovered medical expenses. In all other respects, the judgment of the trial court is affirmed.

Judgment affirmed in part, reversed in part, and remanded.

SHARPNACK, C.J., and KIRSCH, J., concur.