Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Aug 23 2012, 9:25 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN LEE CIYOU**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KRISTA C. (WILSON) WILLIAMS, | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1111-DR-541 |
| | ) | |
| PHILIP S. WILSON, | ) | |
| Appellee. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia S. Emkes, Judge
Cause No. 41D02-0506-DR-214

**August 23, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**ROBB, Chief Judge**

The marriage of Krista Williams ("Mother") and Philip Wilson ("Father") was dissolved by the Johnson Superior Court. The issues presented in this appeal arise from Mother's refusal to allow Father parenting time with their minor child, and Mother's request for a child support modification. Specifically, Mother raises the following issues in this appeal, which we restate as: 1) whether the trial court abused its discretion when it found Mother in contempt of court; 2) whether the trial court abused its discretion when it ordered Mother to transport the child to and from Father's supervised visits with the child; 3) whether the trial court abused its discretion when it ordered the parties to share the tax exemption for the parties' child; 4) whether the trial court abused its discretion when it failed to retroactively modify Father's child support obligation to the date that Mother filed her petition for modification of child support; and 5) whether the trial court abused its discretion when it denied Mother's request for attorney fees.

We conclude that the trial court did not abuse its discretion in 1) finding Mother in contempt of court, 2) ordering the parties to alternate the tax exemption for M.W. each year, 3) declining to order a retroactive child support modification, and 4) denying Mother's request for attorney fees. We also conclude that if Father's parenting time is still under supervision, we direct the trial court to reconsider its decision to order supervised visitation on Saturday or Sunday because Mother's ability to transport M.W. on weekends is limited due to her employment. Therefore, we remand this case for the trial court to reconsider its decision regarding the timing of supervised visitation and affirm in all other respects.

2

Mother and Father have one child, M.W., who was born in January 2001. The parties' marriage was eventually dissolved and Mother was awarded physical custody of M.W., but the parties were ordered to share joint legal custody.

In 2005, Mother filed an emergency motion to modify parenting time and Father filed a motion for contempt. Although the specific circumstances that lead to Mother's motion are not included in the record before us, it seems to have involved a situation between M.W. and D.S., another child living in Father's neighborhood.

In its order on those pleadings, the trial court concluded that Mother proved "by a greater weight of the evidence that unless some restrictions are placed on" Father's parenting time, M.W.'s "physical health might be endangered." Appellant's App. at 27. "Specifically, unless [Father] is strictly admonished to take all necessary steps to not allow any contact between [D.S.] and [M.W.], there is a risk that [M.W.] may be physically or emotionally harmed by the actions of [D.S.]." Id. The trial court ordered Father to prohibit any contact between M.W. and D.S. and "must not allow the children to be within 30 feet of one another." Id. at 28. In its order, the trial court declined to find Mother in contempt for withholding Father's parenting time "based on a good faith belief that the child was in physical and/or emotional danger if visitation were to continue unrestricted. The court finds the basis for her belief to be credible and finds her actions not subject to a contempt finding." Id.

Approximately four years later, on or about April 1, 2009, Father's fiancée's brother, Brian McCubbins was released from jail and moved into Father's home. Father

3

did not know the specific crimes McCubbins had been convicted of but allowed him to reside in his home. Father did not tell Mother that McCubbins was living in his home. In August 2009, M.W. told Father that McCubbins tucked her into bed "sometimes," which "freaked . . . out" Father. Transcript at 39. That same day, Father told McCubbins that he could no longer reside in his home. Father learned that McCubbins had been arrested shortly thereafter, but did not know what charges were pending against him.

On or about September 23, 2009, Mother received a phone call from a detective with the Greenwood Police Department. The detective was investigating an allegation that McCubbins had molested a child residing in Father's neighborhood and in so doing, he received information that M.W. had possibly been molested as well. The detective contacted Mother and the Department of Child Services. M.W. was interviewed and law enforcement officials ultimately determined that McCubbins had not molested M.W. McCubbins was charged with sexually battering Father's neighbor's child and he is currently incarcerated.

Mother has not allowed Father to exercise his parenting time with M.W. since the molestation investigation began, on some date in September 2009. And on October 23, 2009, she filed a petition for modification of decree of dissolution. In the petition, Mother alleged that Father's supervision of M.W. is "extremely lax" and "he does not adequately restrict [M.W.'s] contact with persons who may pose a danger to her." Appellant's App. at 30. Mother stated that she had restricted Father's "access to" M.W. and requested that his parenting time be "severely curtailed." Id. Mother later filed an amended petition and requested that Father's parenting time be modified and supervised

4

by a court-appointed agency. Mother also filed a petition for modification of child support.

On December 3, 2009, Father filed a petition for contempt against Mother arguing that Mother should be held in contempt for refusing to allow Father to exercise his parenting time. In the latter months of 2009, Father unsuccessfully attempted to contact M.W. and/or exercise his parenting time on three or four occasions. Father made no such attempts in early 2010. However, on June 14, 2010, Father filed a motion for an emergency hearing on his petition for contempt. A hearing on Father's emergency petition was not held until January 19, 2011, more than seven months after filing. Because the hearing could not be completed in one day, the trial court scheduled a hearing for February 2, 2011. That hearing was canceled due to a weather-related issue, and the hearing on the parties' pleadings was not completed until June 14, 2011, one year after Father's petition had been filed.

On June 14, 2011, the trial court issued an order increasing Father's child support to $126 per week, but took the issue of retroactive modification under advisement. On September 13, 2011, the trial court issued its order holding Mother in contempt of court, but also granting her petition for supervised parenting time and modification of child support. The trial court made the following finding of fact concerning contempt:

> 5. The Court finds Mother intentionally and willfully denied Father parenting time far in excess of what would be a reasonable time to restrict the same based on the issues related to Brian McCubbins. Considering the thorough investigation by the Greenwood Police Department and the Division of Child Services and the ultimate decision that there was not any evidence of abuse of [M.W.], Mother should have allowed parenting time to resume herein in early 2010. In large part because there has been a

5

substantial passage of time without parenting time, [M.W.] has been alienated from her Father and she no longer desires to have contact with him. The Court recognizes Mother argues to the Court that Father does not have any interest in [M.W.], her welfare, her schooling or her activities; however, the Court believes that what appears to be a lack of interest is more an inability to find information out in regard to her due to the strained communication and his inability to find out information on his own. Father should take more initiative in finding out about [M.W.'s] schooling, activities, and welfare as he is entitled to as the noncustodial parent, but his failure to robustly pursue contact with [M.W.] and his frustration with the lack of communication is understandable given the many times his attempts at contact were ignored by Mother. The Court is finding Mother in contempt, however, since the Court is ordering her to pay for all transportation costs for supervised parenting time, to share the costs of the same if supervision is still recommended after 16 weeks of therapy and to share the costs of [M.W.'s] therapy, the Court is not imposing sanctions.

Id. at 24-25.

Mother was granted sole legal custody of M.W. Father was granted supervised parenting time and ordered to participate in therapy with M.W. Parenting time was ordered "to increase and become unsupervised as . . . recommended by the therapist/counselor." Id. at 23.

The trial court denied Mother's motion for a retroactive support modification "due to the numerous issues herein and the cost associated with counseling and supervised parenting time that Father will be required to pay." Id. Further, "based on the amount of support Father will be paying," Mother was ordered to "sign IRS Form 8332 (release of right to claim exemption for dependent) during each even numbered year commencing 2012 to allow Father to [c]laim [M.W.] for state and federal income tax purposes." Id. Finally, the trial court denied Mother's motion for attorney fees. Mother subsequently

6

filed a motion to correct error. The trial court denied her motion without a hearing and Mother now appeals.

## Discussion and Decision

### I. Standard of Review

As an initial matter, we note that Father has not filed an appellee's brief. Accordingly, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Prima facie means "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Parkhurst v. Van Winkle, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)). This rule is not intended to benefit the appellant, but rather to relieve this court of the burden of developing arguments on the appellee's behalf. State v. Moriarty, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005). The burden of demonstrating trial error remains with the appellant. State v. Combs, 921 N.E.2d 846, 850 (Ind. Ct. App. 2010).

Also, in this case, the trial court entered findings of fact sua sponte. Therefore, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. Brinkmann v. Brinkmann, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. Hanson v. Spolnik, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. Id. at 76-77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Id.

7

at 77.  Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings.  Id.

## II.  Contempt

First, Mother argues that the trial court abused its discretion when it found her in contempt for restricting Father's parenting time.  A determination of whether a party is in contempt of court is a matter within the trial court's sound discretion, and we reverse only where there has been an abuse of that discretion.  Richardson v. Hansrote, 883 N.E.2d 1165, 1171 (Ind. Ct. App. 2008).  Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment.  Piercey v. Piercey, 727 N.E.2d 26, 31 (Ind. Ct. App. 2000).

Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity."  Srivastava v. Indianapolis Hebrew Congregation, Inc., 779 N.E.2d 52, 60 (Ind. Ct. App. 2002), trans. denied.  There are two types of contempt: direct and indirect.  Id.  Mother was found to be in indirect contempt, which involves actions outside the trial court's personal knowledge.  See In re Contempt of Wabash Valley Hosp., Inc., 827 N.E.2d 50, 61-62 (Ind. Ct. App. 2005).  "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." Francies v. Francies, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), trans. denied;  see Witt v. Jay Petroleum, Inc., 964 N.E.2d 198, 202 (Ind. 2012) (citing In re Perrello, 260 Ind. 26, 29, 291 N.E.2d 698, 700 (1973) ("The willful disobedience of a court order can constitute indirect . . . contempt.  However, the act must be done willfully and with the intent to show disrespect or defiance.") (citations omitted)).

8

Mother argues that her decision to restrict Father's parenting time in contravention of the trial court's order was not willful because allowing Father to exercise his parenting time would have posed a risk to M.W.'s physical and/or emotional health. Our review of the trial court's finding leads us to conclude that the trial court determined that Mother's initial decision to restrict Father's parenting time after she learned that McCubbins had possibly molested M.W. was not willful. Specifically, the trial court found:

> The Court finds Mother intentionally and willfully denied Father parenting time far in excess of what would be a reasonable time to restrict the same based on the issues related to Brian McCubbins. Considering the thorough investigation by the Greenwood Police Department and the Division of Child Services and the ultimate decision that there was not any evidence of abuse of [M.W.], Mother should have allowed parenting time resume herein in early 2010.

Appellant's App. at 24 (emphasis added).

Once Mother learned that McCubbins was no longer residing with Father, that McCubbins had in fact been incarcerated, and that McCubbins had not molested M.W., Mother had no justifiable reason to restrict Father's parenting time. Mother should have taken steps to facilitate and resume parenting time between M.W. and Father after the Greenwood Police Department and the Department of Child Services concluded their investigation. Mother's continued refusal to allow Father to exercise his parenting time is sufficient evidence to establish that she willfully disobeyed the trial court's parenting time order, and therefore, the trial court did not abuse its discretion when it held her in contempt.[1]

---

[1] Although we affirm the trial court's decision to hold Mother in contempt, we also observe that the trial court inexplicably failed to hold a hearing on Father's December 7, 2009 petition for contempt until January 19, 2011. The chronological case summary establishes that the parties attempted to mediate the dispute, but a report

### III.  Transportation of M.W. for Supervised Parenting Time

Mother next claims that the trial court abused its discretion when it ordered her to pay the costs associated with transporting M.W. for supervised parenting time.  We review the trial court's decision to apportion transportation expenses associated with parenting time for an abuse of discretion.  Saalfrank v. Saalfrank, 899 N.E.2d 671, 681-82 (Ind. Ct. App. 2008).  The Parenting Time Guidelines briefly address transportation costs and state that "[t]he cost of transportation should be shared based on consideration of various factors, including the distance involved, the financial resources of the parents, the reason why the distances exist, and the family situation of each parent at that time."  Parenting Time Guideline § 1(B)(1), cmt. 2.

Although not explicitly ordered in its findings, by ordering Mother to pay the cost of transporting M.W., the trial court impliedly ordered Mother to personally provide transportation for M.W. so that she may participate in the court-ordered supervised visitation.  Mother reasonably observes that transporting M.W. for two hours of supervised visitation on Saturdays or Sundays will interfere significantly with her work

---

was filed with the trial court in April, 2010, that mediation was unsuccessful.  Father filed a petition for an emergency hearing on his petition for contempt in June 2010, and a hearing was set for July but was continued until August 2010 at Mother's request.  Mother filed another motion for a continuance, which was granted, and the hearing was not reset at that time.  Father filed another request for a hearing in October 2010.  The trial court set the matter for a hearing for January 19, 2011.  That hearing was held, but was continued because the parties needed additional time to present evidence.  At the end of that hearing, the trial court did not order parenting time to resume, but suggested that Mother facilitate communication between Father and M.W. via email.  Due to a weather cancellation and Mother's motion to continue the hearing, the hearing was not completed until June 14, 2011.  The trial court then did not issue its order reestablishing Father's parenting time, albeit supervised, until September 13, 2011, the date Father filed a "Motion for Ruling."  Father's petition for contempt against Mother languished in the trial court for over twenty-one months before Father's parenting time with M.W. resumed.

schedule.[2] On the other hand, Father indicated that his work schedule was somewhat flexible.

At the June 14, 2011 hearing, during a discussion of the parameters of supervised visitation, Father's attorney indicated that Father would be available in the evenings. The trial court then stated that evenings are more difficult to schedule, but agreed that supervised visitation could occur on evenings due to Mother's weekend work schedule. Tr. at 85-86. Yet, the trial court then ordered the supervised visitation to occur on Saturdays or Sundays for at least sixteen weeks. More than sixteen weeks have elapsed since the trial court's order, and there is no evidence in the record that would establish whether supervised visitation is still occurring. On remand, we direct the trial court to reconsider its decision to order supervised visitation on Saturday or Sunday in light of its prior recognition that transporting M.W. on the weekends would be difficult due to Mother's employment.

## IV. Shared Tax Exemption

Mother next argues that the trial court abused its discretion when it ordered the parties to alternate the tax exemption for M.W. each year, modifying its prior award of the tax exemption solely to Mother. Concerning this issue, our court has stated:

> We note at the outset that 26 U.S.C. § 152(e) (2000) automatically grants a dependency exemption to a custodial parent of a minor child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year. Moreover, we have previously held that a trial court under certain circumstances may order the custodial parent to sign a waiver of the dependency exemption. Furthermore, the Commentary to the Indiana Child Support Guidelines states that the

---

[2] Mother is a registered nurse and works only on Saturdays and Sundays.

11

Guidelines were developed without taking into consideration the award of the dependency exemption. Instead, courts are instructed to review each case on an individual basis.

Nonetheless, the Guidelines recommend that, at a minimum, the following five factors be considered in determining when to order a release of the exemptions:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

(5) the financial burden assumed by each parent under the property settlement in the case.

Harris v. Harris, 800 N.E.2d 930, 940-41 (Ind. Ct. App. 2003) (citations omitted), trans. denied.

In its consideration of the above factors,[3] a "trial court's equitable discretion should be guided primarily by the goal of making the maximum amount of support available for the child." Id. at 941 (quoting Lamon v. Lamon, 611 N.E.2d 154, 159 (Ind. Ct. App. 1993)). The noncustodial parent bears the burden of demonstrating the tax consequences to each parent of transferring the exemption and how such a transfer would benefit the child. Id.

All evidence critical to resolution of this issue is included in the record.[4] The Income Shares Model, upon which the Child Support Guidelines are based, is "predicated on the concept that the child should receive the same proportion of parental income that

---

[3] The General Assembly recently codified these factors in Indiana Code section 31-16-6-1.5.

[4] While specific evidence of the tax consequences to the parties as to allocation of the exemption might be lacking, such evidence is not essential. See Skinner v. Skinner, 644 N.E.2d 141 (Ind. Ct. App. 1994) (noting that no evidence was presented demonstrating the tax consequences of allocating the tax exemption of one parent, and focusing the inquiry on "the effect, if any, of divesting" the other parent of the exemption).

he or she would have received if the parents lived together." Ind. Child Support Guideline 1. And while the primary purpose of child support and allocation of the tax exemption is appropriately providing for the child, such provision for M.W. is not at issue here because ordering the parties to alternate – or allocating the tax exemption to one parent or the other – will not meaningfully alter the support available to M.W. In other words, the first and primary factor is a wash and should not affect the court's decision, so it is irrelevant that precise evidence might be lacking.

Evidence regarding the second, third, and fourth considerations suggest that alternating the exemption would be best for M.W. and be fairest to the parties. Specifically, the income of each parent is included in the record.

The fact that their incomes are about the same (a $115 disparity in the parties' weekly gross income) suggests that alternating the exemption each year would allow each parent to continue to pay his or her share – almost the same – and M.W. would continue to receive the maximum benefit. The third factor, the number of years the child could be claimed as a dependent, is included in the record in the form of the child's age, and because the number of years for the exemption is relatively high, the financial break that both parties can repeatedly receive if the exemption were to alternate further ensures that <u>both</u> parties will be able to continue to financially support M.W., in the form of child support payments and other visitation expenses by Father, and the usual expenses associated with sole custody by Mother.

Again, the fact that both parents' incomes are about the same means that each parent's percentage of the cost of supporting M.W. is about the same, which is the fourth

13

consideration. As a result, it makes sense to have the parents take turns benefiting from the tax exemption.[5]

As Mother's appellate brief suggests, when providing for the child is not at issue, the trial court must then evaluate a variety of factors which essentially seek the fairest solution to the parents. Here, where the parents' incomes are not significantly different, Mother has sole physical custody, and Father is ordered to pay child support and a variety of expenses related to visitation, alternating the exemption would lead to relatively equal financial support of the child for the long-term. The trial court did not abuse its discretion in ordering the parties to alternate the tax exemption each year.

IV. Retroactive Modification of Child Support

Mother next argues that the trial court abused its discretion when it refused to award retroactive modification of child support back to January 19, 2011, the date Mother filed her child support modification petition. Decisions concerning child support generally rest within the sound discretion of the trial court. Billings v. Odle, 891 N.E.2d 106, 108 (Ind. Ct. App. 2008). And a "trial court has discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date thereafter." Becker v. Becker, 902 N.E.2d 818, 820 (Ind. 2009) (emphasis added).

The trial court specifically declined to order a retroactive support modification because of "the cost associated with counseling and supervised parenting time that Father will be required to pay." Appellant's App. at 23. Although there is no evidence in the

---

[5] Mother concedes the fifth factor, financial burden assumed by each parent under the property settlement, "do[es] not appear to have application in this case." Appellant's Brief at 20.

14

record specifically stating the amount of the fees for counseling and supervised parenting time, there is testimony from which an inference can be made that those fees can be quite costly. Moreover, child support modifications "normally speak only prospectively." Quinn v. Threlkel, 858 N.E.2d 665, 674 (Ind. Ct. App. 2006). Given these circumstances, we cannot say that the trial court abused its discretion when it declined to order a retroactive child support modification.

### V. Attorney Fees

Finally, Mother argues that the trial court abused its discretion when it declined to award her attorney fees.

> In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. The trial court has broad discretion in awarding attorney's fees. Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration.

Julie C. v. Andrew C., 924 N.E.2d 1249, 1261 (Ind. Ct. App. 2010) (citations omitted).

Mother instituted these proceedings by filing an emergency motion to modify parenting time. Her decision to restrict Father's parenting time was initially reasonable under the circumstances. However, her continued refusal to allow parenting time and facilitate interaction between Father and M.W. became contemptuous after McCubbins was removed from Father's household and jailed, and the molestation investigation was closed.

15

Moreover, the parties' resources and earning ability appear to be relatively equal. Finally, Father was ordered to bear the significant cost of supervised parenting time fees and therapy for himself and M.W. For all of these reasons, we conclude that the trial court did not abuse its discretion when it denied Mother's request for attorney fees.

## Conclusion

The trial court's decision to hold Mother in contempt is supported by the evidence. Also, the trial court did not abuse its discretion when it declined to order a retroactive child support modification, denied Mother's request for attorney fees, and ordered the parties to alternate the tax exemption for M.W. each year. However, if Father's parenting time is still under supervision, we direct the trial court to reconsider its decision to order supervised visitation on Saturday or Sunday because Mother's ability to transport M.W. on weekends is limited due to her employment. Therefore, we remand this case for the trial court to reconsider its decision regarding the timing of supervised visitation and affirm in all other respects.

Affirmed and remanded.

BAILEY, J., concurs.

MATHIAS, J., dissents with opinion.

16

# IN THE
# COURT OF APPEALS OF INDIANA

KRISTA C. (WILSON) WILLIAMS,    )
                                     )

    Appellant                     )
                                     )

         vs.                    )         No. 41A01-1111-DR-541
                                     )

PHILIP S. WILSON,               )
                                     )

    Appellee                    )

**MATHIAS, J., dissents with opinion**

I respectfully dissent from my colleagues' conclusion that the trial court properly ordered the parties to alternate the tax exemption for M.W. each year, which modified the court's prior award of the tax exemption solely to Mother. Although the Child Support Guidelines are worded in permissive terms, our decisions make clear that a trial court should consider the five factors if a party raises the issue of tax exemptions and that this court will assess these factors when determining whether the trial court abused its discretion. See Carpenter v. Carpenter, 891 N.E.2d 587, 596 (Ind. Ct. App. 2008); Quinn v. Threlkel, 858 N.E.2d 665, 675 (Ind. Ct. App. 2006). It bears repeating that the noncustodial parent, Father in the case before us, bears the burden of demonstrating the tax consequences to each parent of transferring the exemption and how such a transfer would benefit the child. Although Father briefly requested that the parties alternate the

17

tax dependency exemption for M.W., Father failed to present any evidence addressing the tax consequences to each parent of transferring the exemption. And Father failed to argue either to the trial court or on appeal (given his failure to file a brief) how transferring the tax exemption would benefit M.W.

The trial court ordered Mother to sign a release of her right to claim the dependency exemption simply because of the increase in Father's child support payment. There is nothing in the trial court's order to suggest that it considered the five factors enumerated in the guidelines. The record does establish that the exemption will remain available to the parties for several years and that there is a $115.00 disparity in the parties' weekly gross incomes. Ex. Vol., Pet. Ex. 11.

But there is no evidence in the record from which the court could determine the tax consequences to each parent of transferring the exemption, and therefore, how the transfer would benefit M.W. Mother's gross income is approximately ten percent more than Father's. Therefore, the tax exemption may be more beneficial to her, but without more evidence of the parties' relative tax burdens, this is simply speculation. Moreover, without such evidence in the record, it is not possible to determine whether ordering the parties to alternate the exemption will maximize the amount of support available for M.W. I would therefore conclude that Mother has established prima facie error on this issue and reverse the trial court's decision to order the parties to alternate the tax exemption for M.W.