**Brenda K. HACKER, Appellant (Respondent),**

v.

**John HACKER, Appellee (Petitioner).**

No. 35A02–9409–CV–551.

Court of Appeals of Indiana.

Dec. 29, 1995.

Anthony M. Stites, Barrett & McNagny, Fort Wayne, Daniel M. Graly, Fort Wayne, for Appellant.

John F. Branham, Steven A. Wade, Gordon Bendall Branham McNeely & DeLaney, Huntington, for Appellee.

## OPINION

SULLIVAN, Judge.

Brenda Hacker (Brenda) appeals the trial court's order granting John Hacker's (John) motion to correct errors following a marriage dissolution decree.

We affirm in part, reverse in part, and remand with instructions for the trial court to enter a modified decree consistent with this decision.

Upon appeal, the parties present the following issues for our review, which we rephrase as follows:

(1) whether the trial court in granting John's motion to correct errors erred in its revised valuation of the marital estate;

(2) whether the trial court abused its discretion in awarding Brenda 88.3 percent of the marital assets based in part upon John's potential inheritance.

Brenda and John Hacker were married on April 17, 1970. John filed for dissolution on October 7, 1991, and on September 29, 1993, the court entered a final decree, along with findings of fact and conclusions of law.

At the time the dissolution action was filed, Brenda was 43 years old and was earning approximately $14,700 per year as a receptionist for an accounting firm. John was 45 years old and was self-employed as a farmer. Brenda's employer did not offer a retirement plan, and her sole retirement funds were lodged in an Individual Retirement Account.

Brenda was employed outside the home during the entire course of the marriage. From 1983 to 1991, her gross earnings were $117,761, while John's gross losses from his farming endeavors were $63,362. Undisputed evidence established that this pattern of earnings and losses was consistent throughout the couple's marriage. Although both parties contributed toward household and living expenses, Brenda was the principal homemaker in addition to working full time at the accounting firm and dedicating approximately 20 hours of service each week to the farming operation.

The couple lived rent-free on a 100–acre farm which was owned by John's parents, and made regular repairs and improvements to the property. With the exception of a bank loan taken over by John's father which was used to build a new pole barn, none of the couple's expenses in improving the property were reimbursed or paid for by John's parents. The trial court noted in its findings that Brenda considered the couple to be equitable owners, and not renters, of the property. John had no surviving siblings; thus, Brenda believed he would eventually inherit the farm.

Although John submitted an exhibit indicating that his net worth was $58,268 on October 7, 1991, contradictory financial statements which he executed under oath for various financial institutions were admitted into evidence on cross-examination. In these statements, he claimed his net worth in January 1990 was $276,444. The figure rose to $298,498 in January 1991, but then dipped to $130,065 in January 1992.

Brenda offered two variations as to the couple's net worth as of October 7, 1991. One set the net worth at $313,997, including an equitable interest in the family farm valued at $215,100. She also submitted an exhibit excluding the family farm and establishing a marital net worth of $177,722.

The trial court appeared to adopt Brenda's dual valuations of the marital estate in its analysis, and awarded her $156,998.50: $38,616 in marital assets and a judgment against John for $118,382.50. John's award included the family farm.

John filed a motion to correct errors on October 27, 1993, seeking relief from several errors allegedly made by the trial court. According to the motion, the trial court erred by treating the family farm as if it were owned in unencumbered fee simple and then improperly including it among the marital assets. The motion also asserted that the

trial court's award to Brenda was contrary to law because it violated the presumption of equal division of marital assets, and exceeded the actual net worth of the couple. A final error alleged is that the court based its finding upon the assumption that John would inherit the family farm while refusing to receive evidence as to the testamentary intent of John's father.

On May 19, 1994, the trial court granted John's motion to correct errors, finding that it had "mistakenly included in the property distribution property that was not part of the marital estate." Record at 5. The decree was not modified to reflect the revised valuation.

## I. VALUATION OF MARITAL ESTATE

■ Upon appeal, neither party challenges the court's decision to exclude the value of the family farm from the gross marital estate, a decision which we affirm. Case law has long established that an unvested interest in property is not divisible as a marital asset. *Leisure v. Leisure* (1993) Ind., 605 N.E.2d 755, 759 (future income); *Skinner v. Skinner* (1994) Ind.App., 644 N.E.2d 141, 146 (unvested pension); *McNevin v. McNevin* (1983) Ind.App., 447 N.E.2d 611, 616 (unliquidated tort claim). No one has vested rights in an ancestor's property until the latter's death. *Townsend v. Meneley* (1905) 37 Ind.App. 127, 137, 74 N.E. 274, 277, *reh'g. denied.* Even some vested interests, such as remainders in which the spouses have no present possessory interest, are deemed too remote to be included in a property award settlement. *Loeb v. Loeb* (1973) 261 Ind. 193, 199, 301 N.E.2d 349, 353 (vested remainder subject to complete defeasance not divisible); *Fiste v. Fiste* (1994) Ind.App., 627 N.E.2d 1368, 1371–72 (remainder interest, whether vested or contingent, not marital property).

■ In this case, the dispute centers around the parties' differing interpretations as to the trial court's valuation of the gross marital estate and the family farm, as well as the effect of excluding the farm's value on the property distribution scheme.

Brenda contends that "[t]here can be no dispute that the original finding of the Court *excluded* the family farm" and valued the total marital estate at $177,722. Appellant's Brief at 10 (emphasis in original). The crux of her argument is that the court in granting the motion to correct errors mistakenly deducted the value of the family farm when, in fact, the family farm and its underlying debt already were excluded in the original decree. According to Brenda, this "double-deduction" resulted in a revised marital estate of $98,897.

Brenda's assertion reflects an erroneous mathematical computation and is not borne out by the clear wording of the decree. In dividing the property, the court adopted verbatim Brenda's higher valuation, holding that it had "the authority to include as a marital asset the parties['] equitable interest in the farm" since it was not conveying any specific interest in the property to Brenda. Record at 15.

Based upon the detailed valuation prepared by Brenda, the trial court determined the following net values for the marital estate:

ASSETS

| | |
|---|---|
| Real estate | $ 7,250 |
| Sheets farm & other land | $ 64,116 |
| Equitable interest in family farm | $215,100 |
| Personal property (total) | $ 2,977 |
| Vehicles (total) | $ 19,900 |
| Farm equipment | $105,225 |
| Crops/feed | $ 22,350 |
| Feeder/livestock | $ 11,247 |
| Hay/straw | $ 1,000 |
| Bank accounts (total) | $ 12,680 |
| Certificate of deposit | $ 530 |
| U.S. Savings Bonds | $ 1,333 |
| Life insurance (total) | $ 11,441 |
| I.R.A. | $ 8,689 |
| **TOTAL ASSETS** | **$483,838** |

LIABILITIES

| | |
|---|---|
| Mastercard | $ 285 |
| State Bank of Markle—Equipment loan | $ 55,236 |
| Janice M. Hacker | $ 15,000 |
| State Bank of Markle—unsecured loan | $ 16,000 |
| State Bank of Markle—Dale Hacker | $ 78,825 |
| John Deere Credit Services | $ 4,495 |
| **TOTAL LIABILITIES** | **$169,841** |

| | |
|---|---|
| TOTAL ASSETS LESS TOTAL LIABILITIES = NET WORTH AS OF 10/7/91 | $313,997 |

The court awarded Brenda $38,901 in assets and $285 in liabilities, for a net value of $38,616. The decree also states that John "shall be awarded the following . . . ," Record at 20: $444,937 in assets, including the $215,-

100 equitable interest in the family farm, and $169,556 in liabilities, for a net value of $275,-381. In addition, John was ordered to pay Brenda $118,382.50. Thus, each spouse would receive a total of $156,998.50—a 50/50 split. The decree also required the couple to share equally their 1991 federal income tax refund.

In ordering the above division of assets and liabilities, the court stressed that it had the authority to count the family farm as a marital asset since it was not conveying any interest to Brenda. The court went on to observe, however, "*if* [it] excludes the parties' equitable interest in the family farm, *then* the marital net worth of the parties is $177,722.00 and due to the above enumerated factors, Respondent Wife *should be* entitled to 88.3%".[1] Record at 15 (emphasis supplied). Under this alternative valuation excluding the family farm, Brenda would receive $156,998.50, which is the same dollar amount the trial court said she would be entitled to if the family farm were included and the property was divided equally.

Brenda is arguing that we should construe the one-paragraph alternative valuation as the actual award, and disregard, as dicta, the detailed six-page line-by-line valuation incorporated in the decree. However, it is clear from the language that the trial court included the family farm in the marital estate and awarded it to John; thus, the farm was only deducted once by the trial court. That deduction occurred when the court granted John's motion to correct errors.[2]

Because the court failed to modify the decree following its grant of the motion to correct errors, however, the parties have differing interpretations as to the result achieved by its order to exclude the family farm. According to Brenda, the revised marital net worth should have been $177,722, but due to a "simple math error" on the part of the judge the amount was incorrectly tallied at $98,870. Appellant's Brief at 13. Conversely, John asserts the revised marital net worth should have been $98,700,[3] but was erroneously computed at $177,722, again due to the trial judge's "simple mathematical error[.]" Appellee's Brief at 22. Thus, John argues, the $118,382.50 judgment which Brenda was awarded against him is clearly erroneous because it exceeds the net value of the marital estate. *Id.* at 22–23.

As discussed above, the original decree states, "if this Court excludes the parties' equitable interest in the family farm, then the marital net worth ... is $177,722[.]" Record at 15. Construing the language in the decree and the motion to correct errors together, we are constrained to adopt the higher valuation of $177,722.

 Upon appeal, John argues this valuation is erroneous. The standard for reviewing the trial court's valuation of property is the same as the standard for reviewing the court's division of property. *Skinner, supra,* 644 N.E.2d at 143. The valuation of assets is committed to the trial court's sound discretion, and as the reviewing court, we will not reweigh the evidence, but will consider it in a light most favorable to the judgment. *Id.* We will only reverse the trial court if the valuation is clearly against the logic and effect of the circumstances before it. *Nill v.*

---

1. The decree stated, "Further, and in the alternative, that due to the substantially greater earnings during the marriage, the fact that she was a principal homemaker and also contributed services to the farm and due to the fact that the economic circumstances of Husband is [sic] substantially greater in that he will in all likelihood continue to live on the farm rent free and eventually inherit same, the statutory presumption of a 50/50 division of marital assets and debts is rebutted." Record at 15.

2. There are two ways the trial court could have reached the revised valuation of $98,897 which was asserted by Brenda; however, neither method encompasses the "double-deduction" of the farm alleged in Brenda's appeal. If the net value

of the marital estate was $313,997, including the family farm, a revised valuation of $98,897 would result from a one-time deduction of the farm's $215,100 value. If the net value of the marital estate was $177,722, excluding the family farm, a revised valuation of $98,897 would result from a deduction of $78,825, and not, as Brenda argues, from a deduction of the farm's $215,100 value. Based upon Brenda's own figures, the court could not have made a double-deduction of the family farm because such a deduction would have yielded a revised valuation in a negative amount.

3. John's math in reaching this figure is erroneous. The correct figure should be $98,897.

*Nill* (1992) Ind.App., 584 N.E.2d 602, 603–04, *trans. denied; Neffle v. Neffle* (1985) Ind. App., 483 N.E.2d 767, 770, *trans. denied.*

The difference in valuations argued by John and Brenda is a dollar figure of $78,825, which is the amount of a loan owed to the State Bank of Markle by John's father, Dale Hacker. John is correct in his assertion that the record does not indicate any debt owed by either him or Brenda on the family farm, nor were any liabilities listed in conjunction with the farm. Under the method of valuation proposed by Brenda and adopted by the court, debts owed on each individual asset were listed alongside the asset and were netted out before the value of the asset was tallied. The farm was valued at $215,100, with no liabilities listed. However, the liabilities section of the exhibit did contain the $78,825 Dale Hacker loan. Although the exhibit does not specify the purpose of this loan, the trial court in its findings of fact noted that John had borrowed an unspecified amount of money to erect a pole barn on the family farm. The loan was later assumed by John's father.

Although John contends that "a diligent search of the [r]ecord ... failed to turn up any indication that a loan was owed on the [f]amily farm and that [the loan] appeared on the liability side of the listing of the spouses['] assets and liabilities," (Appellee's Brief at 22) the court, in adopting the $177,722 figure, accepted the valuation of the marital estate minus the farm as submitted by Brenda. "An appraisal submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determinations[.]" *Skinner, supra,* 644 N.E.2d at 144. Disregard of the $215,100 value attributed to the farm and of the $78,825 Dale Hacker loan supports the trial court's conclusion that a revised net marital estate was in the amount of $177,722. As such, this conclusion was not

clearly against the logic and effect of the circumstances and reasonable inferences before the court. Thus, the $118,382.50 judgment awarded to Brenda did not exceed the total value of the marital estate.

## II. JUST AND REASONABLE DIVISION OF MARITAL ASSETS

As we construe the original decree, the trial judge intended the marital estate to be divided equally only if the family farm was included and awarded to John. Brenda's share rises to 88.3 percent upon exclusion of the farm's value. Because we affirm the trial court's decision to exclude the family farm, the issue of the unequal division is necessarily before this court for review.

In his motion to correct errors, John argued that the property division ordered by the court violated the statutory and case law presumption of equal division of marital assets. Although the trial court granted the motion solely upon the basis of its erroneous inclusion of the family farm and did not address the other grounds for relief sought in the motion, upon appeal, the issue is properly addressed by both parties. Brenda contends that the trial court awarded 88.3 percent of the marital estate to her, and asks us to affirm this division. John argues that the trial court's award to Brenda is clearly erroneous because the record does not contain sufficient facts to support such a marked deviation from the presumption of equal division.

Indiana Code 31–1–11.5–11(c) creates a rebuttable presumption that an equal division of assets is just and reasonable. *Truman v. Truman* (1994) Ind.App., 642 N.E.2d 230, 234; *Castaneda v. Castaneda* (1993) Ind.App., 615 N.E.2d 467, 470. A trial court may deviate from equal division so long as it sets forth a rational basis for its decision.[4] *Norton v. Norton* (1991) Ind.App., 573

4. The presumption of an equal division may be rebutted by relevant evidence that such a division would not be just and reasonable, including evidence of the following factors:
 "(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.
(3) The economic circumstances of each spouse at the time the disposition of property is to become effective....

N.E.2d 941, 943. Subject to the statutory presumption for equal distribution, the trial court's decision regarding the disposition of marital property is discretionary, and we will reverse only where the decision is clearly against the logic and effect of the facts and circumstances presented, including the reasonable inferences that might be drawn from them. *Norton, supra,* 573 N.E.2d at 943; *Hasty v. Hasty* (1985) Ind.App., 427 N.E.2d 1119, 1120, *reh'g denied.* In reviewing property division, we presume that the trial court considered and properly applied the statutory guidelines. *Shumaker v. Shumaker* (1990) Ind.App., 559 N.E.2d 315, 318; *Libunao v. Libunao* (1979) 180 Ind.App. 242, 245, 388 N.E.2d 574, 576, *reh'g denied,* 180 Ind. App. 242, 390 N.E.2d 695.

In the decree, the trial court observed that if the family farm was excluded from the marital pool of assets, the statutory presumption of an equal division of marital debt and assets would be rebutted by Brenda's substantially greater earnings during the marriage, her role as the principal homemaker, her contribution of services to the farm, and by the fact that the "economic circumstances of Husband is [sic] substantially greater in that he will in all likelihood continue to live on the farm rent free and eventually inherit same[.]" Record at 15. The court noted that Brenda "has very little, if any, retirement plans and the family farm will, in fact, become Husband's retirement asset." *Id.* The trial court also found that "since the Husband is the only surviving child of his parents ... in all likelihood, he will inherit the farm." *Id.*

Upon appeal, John argues that the trial court's findings do not contain sufficient evidence to permit such a drastic deviation from the presumptive figure. No copies of trial exhibits or evidence were tendered to this court with the Record of Proceedings as filed by Brenda. The trial proceedings were not recorded; therefore, the record cannot be supplemented. Thus, in determining if the trial court's disposition of property was clear-

ly against the logic and effect of the facts and circumstances, the only facts and circumstances we have before us are those contained in the findings of fact.

Specifically, John maintains that neither the findings nor the record indicate that Brenda made a greater contribution in the acquisition of marital property, and that it was illogical for the court to conclude she was the principal wage earner during the marriage but will be financially worse off following the divorce. John asserts that the trial court failed to consider or weigh in his favor his inheritance of a small farm, the "Sheets" farm, during the course of the marriage or the number of hours he worked each week. John's argument regarding these factors is tantamount to an invitation to reweigh the evidence, which we cannot do. *Truman, supra,* 642 N.E.2d at 234; *Finch v. Finch* (1992) Ind.App., 592 N.E.2d 1260, 1261, *reh'g denied.*

John also argues, however, that the court, in considering the couple's relative economic circumstances, placed an unwarranted emphasis upon Brenda's belief that he would be allowed to continue living on his parent's farm rent-free and would eventually inherit the property. Because it is unclear whether these factors should have been weighed at all, we address this argument.

As noted earlier, the trial court made alternative dispositions of property: an equal division if the family farm was counted as an asset and awarded to John, and an 88.3 percent award in favor of Brenda if the family farm was excluded. In granting John's motion to correct errors, the trial court clearly intended the latter division to take effect. Four of the six factors which the court used to rebut the statutory presumption of equal division were also present when the equal division was contemplated and approved: Brenda's substantially greater earnings during the marriage, her role as principal homemaker, her contribution of services to the farm, and her lack of retirement savings.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
(5) The earnings or earning ability of the parties as related to a final division of property

and final determination of the property rights of the parties." I.C. 31–1–11.5–11(c) (Burns Code Ed.Supp.1995).

The only difference was that under the 88.3/11.7 division, the court acknowledged that John did not own the farm, but presumed, based solely upon Brenda's testimony, that he would someday inherit it and until such time, would continue living on the property rent-free.

Because Brenda's earnings and contributions were factors present under both dispositions, the sole factor which could tip the scale in her favor is the court's presumption that John would be granted continued use of the farm and would eventually inherit the property. Thus, a threshold issue in determining if the unequal disposition was against the logic and effect of the circumstances is whether the trial court appropriately considered those particular circumstances as factors in rebutting the statutory presumption of equal division.

### a. Continued Use and Occupancy of the Family Farm

▬▬ The trial court properly considered John's continued residence on the farm in dividing the marital assets. Although a trial court in a dissolution proceeding may not award property which is not owned by either of the parties, the court may consider a present possessory interest in distributing divisible assets. *Moore v. Moore* (1985) Ind. App., 482 N.E.2d 1176, 1179. In *Moore,* the trial judge included in the marital pot a car which was driven by the wife but was actually titled in her father's name. Upon appeal, the court said that even though the car was not divisible as marital property, the fact that it was available for the wife's use could be considered in determining a just and reasonable division of the actual marital assets. John was living rent-free on the family farm at the time the parties separated; thus, his possessory interest was relevant under I.C. 31–1–11.5–11(c) as an economic circumstance of the parties.

John argues, however, that the trial court's reliance on his continued residence at the

farm was clearly erroneous, maintaining "landlords and testators have and will change their minds without much cause or forewarning." Appellee's Brief at 18. Because John is not paying any rent, the relationship with the landowners is, at best, a tenancy at sufferance. *Wallace v. Rogier* (1979) 182 Ind. App. 303, 395 N.E.2d 297, 299. Tenants at sufferance are not entitled to notice to quit. I.C. 32–7–1–7 (Burns Code Ed.Repl.1994). Therefore, although the couple resided on the farm during their marriage, John is correct in asserting that there are no guarantees he will be granted continued residence. Conversely, he may also be allowed to live there rent-free for the remainder of his life. The trial court heard the evidence and weighed these considerations as an economic circumstance of the parties. We will not substitute our judgment for that of the trial court, as John requests.

### b. Potential Inheritance of the Family Farm

▬▬ Trial courts are *required* to consider certain unvested interests in allocating marital property, even though the interests themselves are not divisible. *Koenes v. Koenes* (1985) Ind.App., 478 N.E.2d 1241, 1242 (military retirement pay);[5] *Wilson v. Wilson* (1980) Ind.App., 409 N.E.2d 1169, 1178 (unvested pension). In addition, other types of property in which the spouse has no present possessory interest *may* be considered as relevant to the parties' earning abilities or economic circumstances. *Bressler v. Bressler* (1992) Ind.App., 601 N.E.2d 392, 397 (future earnings); *In re Marriage of Davis* (1979) 182 Ind.App. 342, 347, 395 N.E.2d 1254, 1258, *reh'g denied* (bonus earned after separation).[6] Indiana courts, however, have not dealt squarely with the issue of whether a potential inheritance, while not divisible as a marital asset, may be considered as a factor in dividing marital property.

In *Lord v. Lord* (1982) 443 N.E.2d 847, the wife argued that the dissolution judge erred in admitting evidence regarding an expectan-

---

5. The Indiana General Assembly subsequently amended the statutory definition of marital property to include the right to receive disposable retired or retainer military pay. I.C. 31–1–11.5–2(d) (Burns Code Ed.Repl.1987).

6. Even when future value may be considered, such as with unvested pensions, the final distribution must be just and equitable in light of the *present vested interest* in the property. *Libunao, supra,* 388 N.E.2d at 577.

cy of inheritance from her mother. The trial court noted that evidence of an inheritance is admissible and relevant in certain situations as an economic circumstance of the spouse. However, the trial court expressly excluded consideration of this evidence in his decree by characterizing it as "too speculative and remote to be of any value for consideration in the division of assets by the parties." 443 N.E.2d at 853, n. 6.

Upon appeal, the court held that the wife was not entitled to relief upon the theory that the evidence was improperly admitted because the trial judge did not consider the expectancy in dividing the property. Thus, the reviewing court did not reach the issue of whether a potential inheritance could ever be a factor in the division of marital assets. *Lord, supra,* 443 N.E.2d at 853.

Consideration of an inheritance still under probate was allowed by a panel of this court in *In re Marriage of Osborne* (1977) 174 Ind.App. 599, 369 N.E.2d 653, *reh'g denied.* Some four months before the final separation, the husband's mother died intestate, leaving him probate assets valued at approximately $27,500. Reserving the question of valuation,[7] the appellate court held that the husband's right of inheritance was fixed upon the intestate death of his mother prior to the final separation. 174 Ind.App. at 602, 369 N.E.2d at 655. Thus, the husband's interest was not so remote as to preclude the trial court from considering it in the distribution of assets. *Id.* In addition, the court found that the rebuttable presumption of equal division contained in I.C. 31–1–11.5–11(c) would "permit the court to hear evidence regarding the inheritance and consider it in connection with its assessment of the economic circumstances of the parties at the time the disposition of the marital assets is to become effective." *Id.*

The case before us can be distinguished from *Osborne,* which involved a fixed right of inheritance. Both of John's parents were living at the time of dissolution. Although John is an only child and could eventually inherit the farm either through a will or under the laws of intestate succession,[8] this potential inheritance would evaporate if, in the intervening years, John's parents sell the farm or devise the property to someone else. In addition, unforeseeable changes in the farm marketplace or in governmental policy regarding farm subsidies or the laws of inheritance or taxation could considerably change the farm's value.

In light of these contingencies, John's potential inheritance is analogous to the remote interest considered by this court in *McNevin v. McNevin, supra,* 447 N.E.2d 611. The *McNevin* court held that a wife's unliquidated tort claim was neither divisible as marital property nor could it be considered a factor in awarding property settlements. "Unlike future pension benefits, which have some approximate value, and unlike future salary, which may be estimated and discounted to present worth, an unliquidated tort claim has no present ascertainable value. Any attempt at valuation would be based upon pure speculation...." 447 N.E.2d at 618.

In a dissolution case, a party may rebut the statutory presumption with relevant evidence that an equal division would not be just and reasonable due to several non-exclusive factors, including the "economic circumstances of each spouse at the time the disposition of the property is to become effective" and the "earning ability of the parties as related to a final division of property[.]" I.C. 31–1–11.5–11 (Burns Code Ed. Supp.1995). However, more than mere speculation is required if a factor is to be considered relevant under the statute. This is

---

**7.** The court acknowledged that these assets were subject to the possessory rights of the personal representatives and the statutory charge for the payment of administration expenses and other claims. *Osborne, supra,* 174 Ind.App. at 602–03, 369 N.E.2d at 655.

**8.** Indiana Code 29–1–2–1(d)(1) (Burns Code Ed. Repl.1989) provides that if there is no surviving

spouse, the entire net estate descends to the issue. If one of John's parents precedes the other in death, the surviving spouse will inherit half of the decedent spouse's estate. If the surviving spouse remarries but does not have any more children, the subsequent spouse will take a life estate in ⅓ of the farm. I.C. 29–1–2–1(c) (Burns Code Ed.Repl.1989).

critical due to the final nature of property settlements in dissolution actions.

■ Because property settlements are not ordinarily subject to modification,[9] basing a division upon the possibility of a future inheritance might prove to be unfair in light of subsequent circumstances. While it is true that John could inherit the property next week, he could also wait decades only to discover that such eventuality will not occur. As this court has noted, "A distribution based on contingent values could result in no distribution at all." *Libunao, supra,* 388 N.E.2d at 577. John's expectancy in the farm is a mere possibility and is simply too remote to be a relevant circumstance taken into account by the trial court in deviating from the equal division of property.[10]

■ Although the decree specifies that the deviation from an equal division was based in part upon John's interest in the farm, it is impossible to know how much of the excess was permissibly based on John's present possessory interest and how much was erroneously based on John's potential inheritance. Where the decision rests within the discretion of the trial court, we must reverse if the reasons given are insufficient as a matter of law to justify the manner in which the court exercised its discretion. *In re Marriage of Miles* (1977) 173 Ind.App. 5, 8, 362 N.E.2d 171, 174. The need for reversal arises precisely because the trial court has discretion, and "[i]f the reason given by the court is not a valid basis for a particular exercise of discretion, it can be no more than conjecture on our part that once the court recognizes the invalidity of its original reason it will reach precisely the same exercise of discretion for other reasons." *Id.* We cannot presume that the trial court would reach the same division of property once John's potential inheritance in the family farm is excluded from consideration as an economic circumstance. Therefore, we reverse that portion of the decree awarding 88.3 percent of the property to Brenda, and remand to the trial court for a redistribution of the assets, exclusive of any consideration of John's potential inheritance.

■ Both parties may perceive this remand as an opportunity to present fresh evidence regarding the current status of John's interest in the farm. It is not. The parties are not at liberty to reopen the case in order to submit additional evidence supporting their respective positions. *Scheetz v. Scheetz* (1988) Ind.App., 522 N.E.2d 919, *op. on reh'g.* The evidence of record is sufficient to permit the trial court to redistribute the marital estate without abusing its discretion. *See Riddle v. Riddle* (1991) Ind.App., 566 N.E.2d 78, 82, *trans. denied.*

The judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this decision.

KIRSCH and GARRARD, JJ. concur.

---

9. Indiana Code 31–1–11.5–17(b) provides that "orders as to property disposition ... may not be revoked or modified, except in case of fraud which ground shall be asserted within six (6) years after the order is entered." (Burns Code Ed.Supp.1995).

10. We note that the admissibility of John's potential inheritance is not before this court. John has cited no objection to the evidence made at trial. Appellee's Brief at 4. In fact, he claims in his motion to correct errors that the trial court erred by failing to admit evidence of his father's testamentary intent. Therefore, no error as to admissibility has been preserved for our review. *See Hill v. State* (1989) Ind., 531 N.E.2d 1382, 1384.