**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 22 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE:

**TIMOTHY B. DAY**
Versailles, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF | ) | |
| | ) | |
| LISA MAE SLAYBACK GILLISPIE, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1108-DR-364 |
| | ) | |
| DANNY LEE GILLISPIE, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable W. Gregory Coy, Special Judge
Cause No. 15C01-1007-DR-98

**March 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Lisa Mae Slayback Gillispie ("Wife") appeals from the trial court's division of marital property in the dissolution of her marriage to Danny Lee Gillispie ("Husband"). Wife raises one issue which we revise and restate as whether the court erred in its division of the marital property. We affirm.

The relevant facts follow. Husband and Wife were married in 1991, and no children were born to the marriage. In 2003, Husband and Wife purchased a house and used "$20 some thousand" from Husband's father for the purchase. Transcript at 10. In 2007, Husband received another $10,000 from his father so that Husband would not lose the house.

Husband worked for Schneider National for twenty years driving a truck. Husband had a 401(k) which he cashed out in the amount of $40,981.44 in 2010 by check dated June 15, 2010 and gave his father $32,000.

On July 7, 2010, Husband filed a verified petition for dissolution of marriage. On August 2, 2010, Wife filed a counter-petition for dissolution of marriage. On July 14, 2011, the court held a hearing, and the parties stipulated that the marital residence had been appraised at $68,000, that Husband would receive the residence and pay Wife $34,000, and that Husband and Wife would keep their vehicles. Husband testified that Wife "never worked a day in her life." Id. at 28. Husband testified that the money received from his father was considered a loan. Husband also testified that he gave his father $32,000 and used the remaining amount from the 401(k) to pay for medicine and insurance. Husband's father testified that he gave Husband the money, expected that Husband would pay back the money, and told Husband that he expected to be paid back

2

when he knew that Husband and Wife were separating. Wife testified that the money from Husband's father was a gift. Wife indicated that she did not work outside the home but that she and Husband "bought houses and sold them and fixed them up and everything." Id. at 59.

On July 19, 2011, the court entered an order concluding that Wife had no interest in Husband's 401(k). Specifically, the court's order states:

The Court proceeds with a final hearing and finds as follows:

\* \* \* \* \*

5. The parties stipulate that the marital residence is worth $68,000; that [Husband] should receive the residence as his property; and that he should pay [Wife] $34,000 within ninety (90) days out of the equity of the home. [Wife] shall quitclaim her interest in the property upon receipt of the $34,000.

6. The parties further stipulate that each shall keep the vehicle they have in their possession.

\* \* \* \* \*

8. [Husband's] father, Larry Gillispie, at the time of the purchase of the marital residence, paid over $20,000 toward the purchase of the home and improvements to the home such as sidewalk(s) and septic.

9. [Husband's] father later paid an additional $10,000 to help pay off the balance owed on the residence.

10. The parties do not agree on whether the payments by Larry Gillispie constituted a gift or a loan at the time the payments were made.

11. Larry Gillispie testified that he intended the payments to be a loan and that he expected to be paid back.

12. [Husband] cashed out a 401(k) he had at his former employer, Schneider National, which was in the amount of $40,981.44.

3

13. [Husband] testified that he paid his father $32,000 from the proceeds of the 401(k) and that the remainder was spent on medicine.

14. [Husband] is disabled and receives approximately $1,800 per month disability; [Wife] is disabled and receives a total of approximately $690 per month.

* * * * *

23. If either party has personal items belonging to the other, such as clothing, collectibles, etc., they should return those items to the rightful owner immediately.

24. [Wife] contends that she is entitled to one half the 401(k) and also one half of $6,000 which she claims was left at the residence. Again, [Husband] claims not to know the whereabouts of the $6,000.

25. The Court finds that [Wife] did not work during the entirety of the marriage, that [Husband] worked and paid for most of the parties' living expenses, and that he was the sole contributor to the 401(k).

26. The Court finds that the $34,000 payment is all [Wife] is entitled to based on her monetary contributions during the marriage.

27. As to the cable bill, the Court finds that the parties should split that equally.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED

1. The marriage of the parties is dissolved.

* * * * *

4. [Husband] shall have permanent possession of the marital residence located at 9054 Stitts Hill Road, Moores Hill, Indiana 47032; he shall pay [Wife] the sum of $34,000 within ninety (90) days of the date of this decree. Upon receipt of payment, [Wife] shall quitclaim her interest in the property to [Husband].

5. Each party shall retain all other personal property in their possession, including their cars currently in their possession.

6. [Wife] shall have no interest in the 401(k) retirement account belonging to [Husband] through Schneider National.

7.     Each party shall be responsible for ½ of the outstanding cable bill of $256.

Appellant's Appendix at 4-6.

The issue is whether the trial court erred in its division of the marital property. The trial court apparently entered *sua sponte* findings of fact and conclusions thereon. In general, *sua sponte* findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). When a trial court has made findings of fact, we apply the following two-tier standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. Id. Findings will be set aside if they are clearly erroneous. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Id. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Id. To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. Id. "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." Id.

Ind. Code § 31-15-7-4 governs the division of property in dissolution actions and requires that the trial court "divide the property in a just and reasonable manner." Ind. Code § 31-15-7-4(b). The court shall presume that an equal division of marital property between the parties is just and reasonable, and the trial court may deviate from an equal division only when that presumption is rebutted. Ind. Code § 31-15-7-5. The trial court's

5

division of marital property is "highly fact sensitive and is subject to an abuse of discretion standard." Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). Also, a trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item. Id. We "will not weigh evidence, but will consider the evidence in a light most favorable to the judgment." Id. A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. Hacker v. Hacker, 659 N.E.2d 1104, 1109 (Ind. Ct. App. 1995).

"A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute." Wanner v. Hutchcroft, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008). "Thus, we will reverse a property distribution only if there is no rational basis for the award." Helm v. Helm, 873 N.E.2d 83, 89 (Ind. Ct. App. 2007) (citation omitted).

It is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); Beard v. Beard, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), trans. denied. This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. Thompson v. Thompson, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), reh'g denied, trans. denied. Marital property also includes both assets and liabilities. Capehart v. Capehart, 705 N.E.2d 533, 536 (Ind. Ct. App. 1999), reh'g denied, trans. denied. The trial court has no authority to exclude or set aside marital

6

property but must divide all property.  <u>Moore v. Moore</u>, 695 N.E.2d 1004, 1010 (Ind. Ct.

App. 1998).

Ind. Code § 31-15-7-5 provides:

The court shall presume that an equal division of the marital property between the parties is just and reasonable.  However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

    (1)    The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

    (2)    The extent to which the property was acquired by each spouse:

        (A)    before the marriage; or

        (B)    through inheritance or gift.

    (3)    The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

    (4)    The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

    (5)    The earnings or earning ability of the parties as related to:

        (A)    a final division of property; and

        (B)    a final determination of the property rights of the parties.

Wife argues that the trial court abused its discretion in not equally dividing Husband's 401(k) and by focusing on only her monetary contributions to the marriage. Wife argues that "[h]er efforts undoubtedly contributed to the couple leaving their marriage debt-free." Appellant's Brief at 7. Wife argues that the court awarded an unequal division and that "[b]ecause the court failed to make a finding on whether the money from [Husband's] father was a gift or a loan, this evidence cannot reasonably justify a deviation from an equal split." Id. Wife also asserts that "the Record points more clearly in favor of a gift than a loan." Id. She argues that "[t]he trial court improperly relied only on the fact that [she] did not put money into [Husband's] work-related retirement account," that "[t]his factor alone does not justify an unequal division of marital property," and that her income "is about two-thirds less than" Husband's income. Id. at 8-9.

Husband argues that Wife "appears to contend in her appeal that the Court excluded [his] 401(k) account from the marital assets," but "[t]here is nothing in the Court's Final Decree that indicates that the Court did not consider [his] 401(k) account to be a marital asset." Appellee's Brief at 10. Husband argues that the trial court "had every right to consider the loans from [his] father in connection with the marital real estate to be valid debts of the marriage and conclude that the 401(k) funds paid to extinguish those loans were no longer marital assets." Id. Husband argues that "[i]n eliminating the debt, [he] increased the equity in the marital real estate to be received by [Wife] thereby granting her a fair share of the remaining marital assets." Id. at 11. Husband argues that "[i]t can reasonably be inferred that the Court took into

8

consideration that [Wife] was leaving the marriage basically debt free and was taking with her Thirty-Four Thousand Dollars ($34,000.00) in cash while [Husband] was required to use a portion of his monthly Social Security Benefit to repay the loan needed to pay [Wife] her share of the marital estate." Id. at 12.

In her reply brief, Wife argues that Husband's argument "does not justify unequal division" because "this is not the rationale cited by the court" and "the Record disputes [Husband's] contention that his father loaned the couple money which he expected to be repaid." Appellant's Reply Brief at 3. Wife points out that "[w]hile the court noted that the parties disputed whether the money from [Husband's] father was a gift or a loan, the court made no conclusions concerning this money." Id. Wife also argues that "[t]he court's order made it clear [she] isn't sharing in the proceeds of the retirement account because she didn't pay into it." Id. She further contends that Ind. Code § 31-15-7-5 "was not intended to deprive a non-working spouse of marital assets" and that "[i]f that were the intention, the statute would not specifically require the court to look at non-income producing contributions to marriages." Id. at 4.

According to Husband's testimony, the $32,000 from his father was a loan to Husband and Wife which was repaid from the funds in Husband's 401(k).[1] The court ordered that Husband receive the residence and pay Wife $34,000 which represented one-half of the value of the residence, that the parties keep any vehicles and personal property in their possession, and split the cable bill equally. Under the circumstances, we cannot

---

[1] With respect to the remaining amount withdrawn from the 401(k) of $8,981.44, Husband testified that he used the money to pay for medicine and insurance. Wife made no claim to the trial court and does not argue on appeal that Husband improperly dissipated this amount.

9

say that Wife has overcome the strong presumption that the court considered and complied with the applicable statute.

For the foregoing reasons, we affirm the trial court's division of the marital estate.

Affirmed.

MAY, J., and CRONE, J., concur.