## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Steven M. Bush
Christopher W. Kimbrough
Millbranth & Bush, LLC
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian E. Lewis,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Bray Lewis,<br>*Appellee-Respondent.* | December 29, 2016<br><br>Court of Appeals Case No.<br>66A04-1607-DR-1540<br><br>Appeal from the Pulaski Superior Court<br><br>The Honorable Patrick Blankenship, Judge<br><br>Trial Court Cause No.<br>66D01-1408-DR-43 |

**Najam, Judge.**

## Statement of the Case

[1] Brian Lewis ("Husband") appeals the dissolution court's final decree, which ended his marriage to Bray Lewis ("Wife"). Husband presents two issues for

our review, which we consolidate and restate as whether the dissolution court erred when it awarded Wife $45,000 to compensate her for her share of the $90,000 in marital assets the parties had spent on improvements to a residence they leased from Husband's son. We affirm.

## Facts and Procedural History

[2] Husband and Wife married in June 2005, and there were no children born of the marriage. At that time, Husband owned a home in Monterey, Indiana ("the marital residence"), and the parties lived there together. After a couple of years, however, Husband "lost" the marital residence when he filed for bankruptcy.[1] Tr. at 17. Husband's son Brandon Lewis ended up buying the house, and Husband and Wife continued to live there. The parties paid monthly rent to Brandon, but there was no written lease agreement.

[3] During the time the parties lived in the marital residence, they made improvements to the real property that cost approximately $90,000. While there was no written lease agreement, Wife understood that Brandon would sell the house back to Husband and Wife when Husband was done paying off his bankruptcy debt. Accordingly, Wife believed that she and Husband would ultimately own the house, including the value of the improvements they had made.

---

[1] Husband's bankruptcy stemmed from the dissolution of his previous marriage.

[4] During the parties' marriage, Husband was the sole owner of an S corporation called AgTrans, Inc. ("AgTrans"), a trucking company. AgTrans had no assets in 2004 or 2005. After Husband married Wife, the two of them worked out of the marital residence for a period of time to run AgTrans with no other employees. Initially, Wife was not paid a salary, but after some time passed Wife was paid a nominal salary. Over the course of a few years, AgTrans accumulated new assets, and as of 2013 AgTrans reported to the Internal Revenue Service assets worth almost $300,000.

[5] In August 2014, Husband filed a petition for dissolution of the marriage. At the final hearing, Husband testified in relevant part that he and Wife did not have a lease-to-own agreement with Brandon but, rather, a regular lease agreement, which was not in writing. And Husband testified that he and Wife had spent approximately $70,000 over ten years in making improvements to the marital residence. Wife testified that she and Husband had a lease agreement with Brandon "with an option to buy the home" when Husband's "bankruptcy was over." *Id.* at 49. Wife also testified that she and Husband had spent approximately $90,000 over five years on improvements to the home. The parties generally agreed on the division of personal property between them, but Wife requested that the dissolution court

> divide the business assets listed on the 2013 tax return [totaling almost $300,000], to divide the retained earnings [of over $100,000], and to award her . . . an amount from what was paid with regard to [Husband's] bankruptcy judgment and for the upgrades to the house that [Husband] continues to live in.

*Id.* at 60.

[6]   On June 4, 2015, the dissolution court entered findings and conclusions in
support of the dissolution decree as follows:

> 1)  That during the time of their marriage, [Husband] was the
> owner of a fully furnished home, vehicles, and the sole
> shareholder of a Sub S Corporation known as AgTrans, Inc., a
> trucking company.
>
> 2)  [Wife] had no real estate and had a small amount of personal
> property that she brought into the marriage.
>
> 3)  During the course of the marriage, [Husband] continued to
> operate the business known as AgTrans, Inc. and employed
> [Wife] from time to time to assist him in the operations of the
> office.
>
> 4)  [Wife] was not a part of the corporate structure nor did she
> receive any stock.
>
> 5)  The parties acquired some personal property[,] specifically, a
> Harley Davidson motorcycle with a value of $18,991.00; a 2011
> Polaris with a value of $9,090.00; a 2005 Ford Taurus with a fair
> market value of $2,714.00; a 2009 Saturn with a fair market value
> of $9,233.00; and a camper with a fair market value of $8,000.00.
>
> 6)  That at the time of the final hearing, the only non-business
> debt was the debt attached to the Harley Davidson motorcycle
> through the Harley Davidson Finance Company in the amount
> of $12,073.00.
>
> 7)  That during the term of the marriage, [Husband] went
> through a personal and business bankruptcy as a result of a prior
> dissolution.

8) That as part of that bankruptcy proceeding, [Husband] was required to make monthly payments to the bankruptcy trustee in the amount of $1,500.00 for a period of approximately two years.

9) That as a result of the bankruptcy, [Husband] was required to loose [sic] possession and property interest in his residence.

10) That[,] during the marriage, the parties entered into an alleged lease for the current marital real estate in which they resided during the term of their marriage.

11) The alleged lease was entered into between [Husband] and [Wife] and [Husband]'s adult son. That although no lease was presented to the Court, both parties testified that they made improvements to the leased property in the amount of $90,000.00.

12) That the $90,000.00 at the time that it was expended on the leased marital property were marital assets.

13) *The failure of [Husband] to submit as evidence a written lease regarding the marital property strongly suggests that this was a sham business enterprise between [Husband] and his adult son in order to avoid having to put any real estate in [Husband]'s name or [Wife]'s name for the sole purpose of avoiding having to divide the property in the event of a dissolution. That neither party, and in particular, [Husband], was able to explain with any credibility the financial benefit of investing $90,000.00 in a leased residence.*

14) [Husband] shall receive as his sole and separate property the following: Harley Davidson motorcycle, 2011 Polaris, and all the stock and interest in AgTrans, Inc. [Husband] shall hold [Wife] harmless to any outstanding debt owed to Harley Davidson Finance Company. [Husband] shall also receive all personal property in his possession and accounts in his name.

15) [Wife] shall receive as her sole and separate property the following: 2005 Ford Taurus, 2009 Saturn, the camper, *and an amount of monies [sic] equal to one-half of the parties' investment in the marital property in making marital property improvements in the amount of $45,000.00*. [Wife] shall also receive all property in her possession and accounts in her name.

16) The parties shall be responsible and pay any indebtedness incurred in their own individual name both before and after the date of the filing of the Petition for Dissolution of Marriage and hold one another harmless from the payment thereof.

17) The parties shall each pay their own attorney's fees and costs.

Appellant's App. at 39-41 (emphases added).[2]  This appeal ensued.

# Discussion and Decision

[7] Initially, we note that Wife has not filed an appellee's brief. Accordingly, we will reverse the trial court's judgment if the appellant presents a case of prima facie error. *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010). Prima facie error is error at first sight, on first appearance, or on the face of it. *Id.* Where an appellant does not meet this burden, we will affirm. *Id.*

[8] The trial court here entered findings and conclusions sua sponte to accompany its dissolution decree. Accordingly, the specific factual findings control only the issues that they cover, while a general judgment standard applies to issues upon

---

[2]  By the agreement of the parties, the dissolution court subsequently amended the dissolution decree and awarded the camper to Husband.

which there are no findings. *Fetters v. Fetters*, 26 N.E.3d 1016, 1019 (Ind. Ct. App. 2015), *trans. denied*. Not every finding needs to be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id.* We may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial. *Id.* at 1019-20. Sua sponte findings control as to the issues upon which the court has found, but do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. *Id.* at 1020.

[9] We apply a strict standard of review to a court's distribution of property upon dissolution. *Smith v. Smith*, 854 N.E.2d 1, 5 (Ind. Ct. App. 2006). The division of marital assets is a matter within the sound discretion of the trial court. *Id.* The party challenging the trial court's property division bears the burden of proof. *Id.* That party must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *Id.* at 5-6. The presumption that a dissolution court correctly followed the law and made all the proper considerations when dividing the property is one of the strongest presumptions applicable to our consideration on appeal. *Id.* at 6. Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.*

[10] Husband's sole contention on appeal is that the dissolution court abused its discretion when it awarded $45,000 to Wife. In support of that contention, Husband maintains that, to the extent the court based the award to Wife on the parties' interest in real property and the improvements made thereto, that was error. Husband is correct that "[o]nly property [in which one or both parties have] a vested interest at the time of dissolution may be divided as a marital asset." *Vadas v. Vadas*, 762 N.E.2d 1234, 1235 (Ind. 2002). Further, "'an equitable interest in real property titled in a third-party, although claimed by one or both of the divorcing parties, should not be included in the marital estate.'" *Id.* (quoting *In re Marriage of Dall*, 681 N.E.2d 718, 722 (Ind. Ct. App. 1997)). However, to the extent Husband contends that the dissolution court included the parties' interest in the marital residence in the marital estate, Husband is incorrect.[3]

[11] In the final decree, the dissolution court awarded Wife "an amount of monies [sic] equal to one-half of the parties' *investment* in the marital property *in making . . . improvements* in the amount of $45,000.00." Appellant's App. at 41 (emphases added). Thus, contrary to Husband's characterization of the award, the dissolution court did not award Wife an interest in real property. Rather, the dissolution court awarded Wife one-half of the amount of money the parties had spent on the improvements to the marital residence. Neither party

---

[3] Because we hold that the dissolution court did not premise its award to Wife on any interest, equitable or legal, in real property titled in a third party, we need not address Husband's contention that the court erred when it concluded that his lease agreement with Brandon was a sham.

introduced into evidence the current value of those improvements, but the undisputed evidence showed that Husband continued to reside in the marital residence and continued to enjoy the use and benefit of those improvements.

[12] It is well settled that, although a dissolution court may not award property which is not owned by either of the parties, the court may consider a present possessory interest in distributing divisible assets. *Hacker v. Hacker*, 659 N.E.2d 1104, 1111 (Ind. Ct. App. 1995). Here, with respect to Husband's possessory interest in the marital residence, Husband testified as follows:

> A I rent from [Brandon]. I rent the house from him.
>
> Q Is the rent a long term rental agreement?
>
> A It's, I guess we have never really, as father and son, we
> have never really set up an agreement. I have just been paying
> it every month, and I am living there.
>
> Q So there are really no terms to this agreement?
>
> A No.

Tr. at 21. Thus, the terms and value of Husband's possessory interest are indefinite. As we held in *Hacker*, while "there are no guarantees [Husband] will be granted continued residence" at the marital residence, "he may also be allowed to live there . . . for the remainder of his life." 659 N.E.2d at 1111. "The fact that the [improved] property is available for Husband's continued use and occupancy at [an undisclosed] rent is relevant under Indiana Code section 31-15-7-5(c) as an economic circumstance of the parties and the trial court did

not abuse its discretion in considering this interest in dividing the marital estate." *See England v. England*, 865 N.E.2d 644, 650 (Ind. Ct. App. 2007).

[13] Again, we will affirm the dissolution court's judgment on any theory supported by the evidence. *Fetters*, 26 N.E.3d at 1019-20. The dissolution court heard the evidence that Husband continues to enjoy the use and benefit from the improvements the parties made to the marital residence, and we will not substitute our judgment for that of the dissolution court. *Hacker*, 659 N.E.2d at 1111. The dissolution court did not err when it awarded Wife $45,000.

[14] Affirmed.

Bailey, J., and May, J., concur.